230 P.3d 1038 (2010)
Paul LAWSON, Petitioner,
v.
CITY OF PASCO, a municipal corporation, Respondent.
No. 81636-1.
Supreme Court of Washington, En Banc.
April 15, 2010.
*1039 Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, for Petitioner.
Leland Barrett Kerr, Kerr Law Group, Kennewick, WA, Vicki L. Mitchell, Paine Hamblen, L.L.P., Spokane, WA, for Respondent.
John Earl Woodring, Olympia, WA, Amicus Counsel for Manufactured Housing Communities of Washington.
Jack W. Hanemann, Jr., Olympia, WA, Amicus Counsel for Manufactured/Mobile Home Owners of America.
C. JOHNSON, J.
¶ 1 This case involves a challenge to a Pasco ordinance, former Pasco Municipal Code (PMC) 25.40.060 (2005), which prohibits the placement of recreational vehicles within mobile home parks, on the ground that the ordinance is preempted by the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW. The superior court concluded that the ordinance is preempted by the MHLTA, and the Court of Appeals reversed. Lawson v. City of Pasco, 144 Wash.App. 203, 181 P.3d 896 (2008). We affirm the Court of Appeals.[1]

FACTS
¶ 2 Petitioner Paul Lawson owns and operates a mobile home park in Pasco. One of his tenants, Tye Gimmell, permanently resided in a recreational vehicle (RV) on a lot in the park. On January 23, 2006, the city of *1040 Pasco issued a "correction notice" informing Lawson that he was in violation of former PMC 25.40.060, which states: "No recreational vehicle sites for occupancy purposes shall be permitted within any residential park." Clerk's Papers (CP) at 98. The notice directed Lawson to remove the RV from the park. Though Lawson acknowledged that he was in violation of the ordinance, he did not comply, arguing that the ordinance was preempted by the MHLTA.
¶ 3 On May 4, 2006, Pasco's Code Enforcement Board conducted a compliance hearing, ultimately upholding the correction notice and directing Lawson to evict from his park any tenants occupying RVs as primary residences. Pursuant to the Land Use Petition Act, chapter 36.70A RCW, Lawson appealed to the Franklin County Superior Court, which ruled that Pasco's ordinance is unconstitutional under article XI, section 11 of the Washington Constitution because it conflicts with the MHLTA. The Court of Appeals, Division Three, reversed the superior court and reinstated the Code Enforcement Board's ruling on the correction notice. Lawson now asks us to reverse the Court of Appeals' decision.

ISSUE
¶ 4 Is Pasco's ordinance, former PMC 25.40.060, preempted by the MHLTA, either because the legislature intended to preempt the field of mobile home regulation or because the ordinance directly and irreconcilably conflicts with the MHLTA?

ANALYSIS

A. Standard of Review
¶ 5 The question before us is the preemptive effect of the MHLTA. The interpretation of a statute is a question of law subject to review de novo. Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health, 151 Wash.2d 428, 433, 90 P.3d 37 (2004). When interpreting a statute, we must ascertain and fulfill legislative intent from the words of the statute. The statute at issue here is the MHLTA, chapter 59.20 RCW, and its preemptive effect on local government's authority to regulate mobile/manufactured home landlord-tenant relationships.

B. Preemption
¶ 6 Article XI, section 11 of the Washington Constitution provides that a city "may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." The rule applicable to resolve a preemption issue provides that a state statute preempts an ordinance on the same subject if the statute occupies the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance may not be harmonized. Brown v. City of Yakima, 116 Wash.2d 556, 559, 807 P.2d 353 (1991).

1. Field Preemption

¶ 7 A statute preempts the field and invalidates a local ordinance if there is express legislative intent to preempt the field or if such intent is necessarily implied. Brown, 116 Wash.2d at 560, 807 P.2d 353. In the absence of express intent, we may infer field preemption from the purpose of the statute and the facts and circumstances under which it was intended to operate. HJS Dev., Inc. v. Pierce County, 148 Wash.2d 451, 477, 61 P.3d 1141 (2003). Lawson does not claim that the MHLTA expressly preempts Pasco's ordinance, but rather that the legislature's intent to preempt the field is necessarily implied by the breadth of state involvement in mobile home regulation. The Court of Appeals, after examining the language of the MHLTA, concluded that Pasco's ordinance was not preempted because the legislature explicitly conferred on local governments concurrent jurisdiction over mobile home regulation. The Pasco ordinance, the court found, fell within this legislatively recognized concurrent jurisdiction.
¶ 8 Lawson argues that the Court of Appeals erred by confining its analysis to the MHLTA; he points to the State's wide "range of state activity in connection with mobile homes." Pet. for Review at 8. Among other things, he argues that the State maintains an office of manufactured housing (RCW 59.22.050); requires mobile home communities to register with the State (RCW *1041 59.30.050); maintains a database of all mobile home parks (RCW 59.30.060); and prohibits discrimination in the placement of manufactured/mobile homes (RCW 35.21.684; RCW 35A.21.312; RCW 36.01.225). In addition, the State generally regulates mobile home tenancies. Ch. 59.20 RCW. From this broad regulation, Lawson contends we should infer that the legislature intended to preempt the field of manufactured/mobile home regulation. He argues that the State's comprehensive regulation of the landlord-tenant relationship leaves no room for local regulation.
¶ 9 Such an inference, however, is inappropriate in this case. Though the State's range of regulatory activities would be instructive in the absence of other statutory provisions, the Court of Appeals correctly observed that certain provisions of the MHLTA expressly contemplate some local regulation of manufactured/mobile home tenancies. For example, RCW 59.20.080 and RCW 59.20.130 expressly reference local ordinances to which landlord and tenants may be subject in the context of mobile home parks.[2]
¶ 10 Lawson acknowledges that these statutes confer concurrent jurisdiction, but he argues that this local power extends only to matters concerning tenant misconduct and landlord compliance with public health and safety ordinances. Lawson reads these statutes too narrowly; the ordinances to which these statutes refer could be any local rule, the violation of which might justify termination of the tenancy by the landlord or a tenant. RCW 59.20.080(1)(d) supports a landlord's termination of the tenancy when the tenant fails to comply with any ordinance pertaining to mobile homes. Likewise, RCW 59.20.130(1) requires the landlord to comply with any ordinance applicable to mobile home parks, not just those explicitly related to health and safety. A full reading of that statute reveals a broad spectrum of landlord duties extending beyond repair, maintenance, and safety. Thus, the Court of Appeals correctly recognized that these statutes confer concurrent jurisdiction on local authorities.
¶ 11 This conclusion accords with the stated purpose underlying the MHLTA. The legislature emphasized the importance of preserving mobile home communities for low-income households.[3] Lawson argues that Pasco's ordinance conflicts with this purpose because it prevents those who are confined to RVs from living in mobile home parks. The ordinance, however, also may be read to advance the legislature's stated purpose by preserving parks for mobile and manufactured homes, and funneling RVs to more appropriate venues such as RV parks.
¶ 12 The ordinance furthers the MHLTA's purpose in another way as well: by preserving mobile home parks for mobile and manufactured homes (and RV parks for RVs), the ordinance advances the safety and maintenance concerns unique to each type of residence. The city points to the differences between installation requirements for manufactured/mobile homes and those for RVs. Manufactured and mobile homes are subject *1042 to both state and federal installation and safety standards, which do not apply to or regulate RVs. RCW 43.22.440; 42 U.S.C. §§ 5401-5426; 24 C.F.R. § 3282.8(g). As a result, mobile home lots must be specifically constructed to comport with these standards, while RV lots have different requirements. In contrast, RVs have unique needs of their own not met by mobile home parks: In addition to providing for electricity, water, and sewer service, PMC 25.69.070(11) requires RV parks to provide sanitary dumping stations. Mobile and manufactured homes, in contrast, must have a permanent sewer connection. In addition, "accessory uses" such as restrooms, shower, and laundry are permitted in RV parks. PMC 25.69.080(1).
¶ 13 Pasco has chosen through zoning to separate mobile home parks from RV parks. Under the ordinance at issue in this case, the landowner is restricted to mobile home tenancies in mobile home parks. Under chapter 25.69 PMC, RVs are permitted in separate RV parks. This choice is consistent with the statutory and local regulations that expressly treat the uses separately. We conclude that the state legislature did not intend to preempt the field of mobile home tenancy regulation.

2. Conflict Preemption

¶ 14 The more nuanced question is whether an irreconcilable conflict exists between the MHLTA and former PMC 25.40.060. Such a conflict arises when an ordinance permits what state law forbids or forbids what state law permits. An ordinance is constitutionally invalid if it "`"directly and irreconcilably conflicts with the statute." '" HJS Dev., Inc., 148 Wash.2d at 482, 61 P.3d 1141 (quoting Heinsma v. City of Vancouver, 144 Wash.2d 556, 564, 29 P.3d 709 (2001) (quoting Brown v. City of Yakima, 116 Wash.2d 556, 561, 807 P.2d 353 (1991))). If the two may be harmonized, however, no conflict will be found.
¶ 15 Lawson argues that, under this analysis, Pasco's ordinance conflicts with the MHLTA because it prohibits what the MHLTA permits: the placement of RVs in mobile home parks. He reasons that because RCW 59.20.040 regulates rights and duties arising from mobile/manufactured home tenancies, which may include residential RVs, such RVs are thus affirmatively authorized on any mobile home lot in the state. But the language of RCW 59.20.040 does not support such a conclusion:
This chapter shall regulate and determine legal rights, remedies, and obligations arising from any rental agreement between a landlord and a tenant regarding a mobile home lot....
"Mobile home lot" describes "a portion of a mobile home park ... designated as the location of one mobile home, manufactured home, or park model ... and intended for the exclusive use as a primary residence...." RCW 59.20.030(9). And a "park model" is a "recreational vehicle intended for permanent or semi-permanent installation and ... used as a primary residence." RCW 59.20.030(14). This acknowledgement that park models could be present on mobile home lots is not equivalent to an affirmative authorization of their presence. The statute does not forbid recreational vehicles from being placed in the lots, nor does it create a right enabling their placement.
¶ 16 We faced a similar issue in Weden v. San Juan County, 135 Wash.2d 678, 958 P.2d 273 (1998). In that case, a state law required boats to be registered before they could operate in state waters. We rejected Weden's argument that the law implied a right to operate vessels in all waters in the state. We reasoned that the law created no right; it merely imposed a condition on operation. In State ex rel. Schillberg v. Everett District Justice Court, 92 Wash.2d 106, 108, 594 P.2d 448 (1979), which addressed a conflict with another motor boat statute, we stated, "There being no express statement nor words from which it could be fairly inferred that motor boats are permitted on all waters of the state, no conflict exists...." Similarly, the MHLTA contains no language creating a right to place RVs in mobile home parks anywhere in the state. The statute imposes no restrictions on local government's regulation of landlord-tenant relationships involving mobile/manufactured homes; it merely regulates such tenancies once they exist.
*1043 ¶ 17 The statutory definitions in RCW 59.20.030 apply to any RV used as a permanent residence once a landlord-tenant relationship is established, but they do not require Mr. Lawson to lease a lot designed for a mobile home to the owner of such an RV. Nothing in the statute prevents landowners from choosing to whom they lease lots, and nothing in it prevents municipalities from regulating that choice. The statute simply regulates recreational vehicle tenancies, where such tenancies exist. Because Pasco's ordinance, former PMC 25.40.060, may be harmonized with the MHLTA, the two laws do not conflict.

CONCLUSION
¶ 18 We conclude that the MHLTA neither preempts the field of mobile home regulation nor conflicts with Pasco's ordinance, and we affirm the Court of Appeals.
WE CONCUR: MADSEN, C.J., CHAMBERS, OWENS, JJ., and BAKER, J. Pro Tem.
Justice STEPHENS did not participate.
MADSEN, C.J. (concurring).
¶ 19 When this case was decided by the Franklin County Superior Court in 2006 and when the Court of Appeals reversed that decision in 2008, the Pasco city ordinance at issue was not preempted by state law, for the reasons set forth in the majority opinion. The legislature did not, through the Manufactured/Mobile Home Landlord Tenant Act, chapter 59.20 RCW, decide for every community all of the details respecting alternative home sites. The statutory amendments to RCW 35.21.684, RCW 35A.21.312, and RCW 36.01.225, enacted by the legislature in 2009, see Laws of 2009, ch. 79, which prohibit cities and counties from barring recreational vehicles from mobile home parks, do not alter the conclusion that at the time this case was tried, there was no preemption. Indeed, the amendments strongly support this conclusion because they would have been unnecessary if state law had already prohibited ordinances such as Pasco's. See People's Org. for Wash. Energy Res. v. Utils. & Transp. Comm'n, 101 Wash.2d 425, 431, 679 P.2d 922 (1984) (amendment of an unambiguous statute indicates a purpose to change the law); cf. WR Enters., Inc. v. Dep't of Labor & Indus., 147 Wash.2d 213, 222, 53 P.3d 504 (2002) (when a material change is made in the wording of a statute, a change in legislative purpose is presumed).
¶ 20 The 2009 amendments have changed the law. If the tenants in petitioner Paul Lawson's mobile home park remained in the park through this litigation, they cannot now be forced to leave. Likewise, if tenants now seek to return and live in the park in recreational vehicles, they cannot be prevented from doing so under a local ordinance like former Pasco Municipal Code (PMC) 25.40.060 (2005). As the city of Pasco conceded in its supplemental briefing, the new state law preempted the former city ordinance because the 2009 amendments prohibit what the ordinance mandatedthe banning of recreational vehicles from mobile home parks. City of Pasco's Suppl. Br. at 20 n. 7 (observing that if the then-pending legislation was enacted, it would preempt the ordinance). I note that the city of Pasco has amended PMC 25.40.060 and deleted the ban on recreational vehicles in mobile home parks that the ordinance formerly contained. This amendment was one of several changes to the city's code tending to bring city ordinances into compliance with the new state law. Pasco City Ordinance 3951 (2009); see, e.g., PMC 25.40.020 (which now provides that uses that shall be permitted in residential park districts include placement of a recreational vehicle occupied as a primary residence); PMC 19.24.080 (addressing installation standards for a recreational vehicle used as a primary residence).
¶ 21 With these observations, I concur in the majority opinion.
SANDERS, J. (dissenting)
¶ 22 Article XI, section 11 of the Washington Constitution prohibits cities from enacting ordinances that contravene state statutes. Former Pasco Municipal Code (PMC) 25.40.060 (2005) barred recreational vehicles *1044 (RVs) from mobile home parks.[1] Paul Lawson claims the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, and other state statutes allow, if not require, mobile home parks to site RVs used as primary residences. Because the MHLTA preempts the former Pasco ordinance before us, I dissent.
¶ 23 We have held a city "ordinance must yield to a statute on the same subject either if the statute preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the two cannot be harmonized." Brown v. City of Yakima, 116 Wash.2d 556, 559, 807 P.2d 353 (1991) (citation omitted). The majority stretches statutory boundaries beyond their intended scope and, in doing so, allows a city ordinance to unconstitutionally operate in a scheme exclusive to the State. The ordinance in question irreconcilably conflicted with state statute, and the State has preempted the field of mobile home park regulation.

A. Irreconcilable conflict
¶ 24 Article XI, section 11 of our constitution provides: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." An ordinance violates this limited grant of power "if it directly and irreconcilably conflicts with the statute," Brown, 116 Wash.2d at 561, 807 P.2d 353 (citing Kennedy v. City of Seattle, 94 Wash.2d 376, 383-84, 617 P.2d 713 (1980)), or "if a conflict exists such that the two cannot be harmonized," id. (citing Spokane v. J-R Distribs., Inc., 90 Wash.2d 722, 730, 585 P.2d 784 (1978)).
¶ 25 Pasco's former ordinance flatly banned RVs from mobile home parks. It provided that "[n]o recreational vehicle sites for occupancy purposes shall be permitted within any residential park." Former PMC 25.40.060. The state legislature, however, has spoken specifically on this matter by expressly authorizing RVs in mobile home parks and, recently, forbidding discrimination against RVs therein.
¶ 26 The MHLTA, chapter 59.20 RCW, authorizes placement of RVs in mobile home parks. The MHLTA plainly establishes state jurisdiction over mobile home lots: "This chapter shall regulate and determine legal rights, remedies, and obligations arising from any rental agreement between a landlord and a tenant regarding a mobile home lot...." RCW 59.20.040. The statute says nothing about sharing jurisdiction with local entities. The legislature has defined a "`[m]obile home lot'" as "a portion of a mobile home park ... designated as the location of one mobile home, manufactured home, or park model...." RCW 59.20.030(9). "`Mobile home park[s]'" include "any real property which is rented or held out for rent to others for the placement of two or more mobile homes, manufactured homes, or park models for the primary purpose of production of income...." RCW 59.20.030(10). The statute defines "`[p]ark model'" as "a recreational vehicle intended for permanent or semi-permanent installation and is used as a primary residence." RCW 59.20.030(14). Accordingly, the plain language of the MHLTA unequivocally incorporates park models (i.e., RVs) into mobile home parks, over which the legislature has asserted state authority.
¶ 27 While the MHLTA incorporates RVs into mobile home parks, recent statutory amendments prevent cities from discriminatorily barring or removing RVs from those parks. Laws of 2009, ch. 79[2] amends RCW 35.21.684, RCW 35A.21.312, and RCW 36.01.225. Each amendment offers a minor textual variation of the same commandthat a city or county may not bar or remove RVs from mobile home parks. RCW 35.21.684(3) applies to cities: "[A] city or town may not adopt an ordinance that has the effect, directly *1045 or indirectly, of preventing the entry or requiring the removal of a recreational vehicle used as a primary residence in manufactured/mobile home communities."[3], [4]
¶ 28 In a single conclusory footnote the majority sidesteps these recent amendments by asserting they are not before the court. Majority at 1039. I disagree. The amendments squarely address the removal of RVs from mobile home parks, which is the very essence of this case. Lawson put the amendments before the court June 26, 2009, when he filed a statement of additional authority calling our attention to Laws of 2009, chapter 79. Pasco recognized this direct and irreconcilable conflict when it changed its ordinances late last year. See Pasco City Ordinance 3951 ("[T]he City Council has determined that to address changes in State law it is necessary to amend PMC Title 25 and Title 19...."). The majority's evasion promotes absurd results and hinders judicial economy. Its implicit requirement that Lawson would have to bring a separate lawsuit to put the recent amendments before the courtparticularly when they are so clearly before us nowcannot be sustained.
¶ 29 Pasco endeavored to remove RVs used as primary residences from mobile home parks. The legislature expressly amended RCW 35.21.684, RCW 35A.21.312, and RCW 36.01.225 to remedy the former Pasco ordinance at bar. On January 26, 2009 petitioner Paul Lawson testified before the House Local Government and Housing Committee to encourage passage of then-Engrossed House Bill 1227 to nullify Pasco's ordinance.[5] The bill's sponsor, Representative Larry Springer, encapsulated its purpose with this testimony:
[I thought] about what a lot of families might be facing, whether it's foreclosure, loss of a job, [or] the rising level of homelessness, [and] I didn't see any reason why we should continue to embrace restrictions on people's ability to find a safe and warm place in a community....
Hr'g on HB 1227 Before the H. Local Government and Housing Comm., 61st Leg., Reg. Sess. (Jan. 26, 2009) (emphasis added), audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. Representative Springer's testimony shows an unmistakable intent to halt and reverse local restrictions that ban RVs from mobile home parks. The amendments to RCW 35.21.684(3) and its brethren speak directly toand irreconcilably conflict withPasco's former ordinance. The amendments squarely preclude Pasco and other local jurisdictions from banning or removing RVs from mobile home parks.
¶ 30 Former PMC 25.40.060 violated Washington Constitution article XI, section 11 by irreconcilably conflicting with the state's general laws.

B. Field preemption
¶ 31 Lawson asserts the legislature intended to occupy the field of RV placement in mobile home parks. "Preemption occurs when the Legislature states its intention either expressly or by necessary implication to preempt the field." Brown, 116 Wash.2d at 560, 807 P.2d 353. "If the Legislature is silent as to its intent to occupy a given field, the court may look to the purposes of the statute and to the facts and circumstances upon which the statute was intended to operate." Id. If the legislature "`affirmatively expresses its intent, either to occupy the field or to accord concurrent jurisdiction, there is no room for doubt.'" Id. (quoting Lenci v. City of Seattle, 63 Wash.2d 664, 670, 388 P.2d 926 (1964)).
¶ 32 In Brown we held the legislature expressly granted concurrent jurisdiction via the state fireworks law. The law referenced "`state-wide minimum standards'" and "`[a]ny local rules adopted by local authorities that are more restrictive than state *1046 law....'" Id. (emphasis omitted) (quoting RCW 70.77.250(4)). We held, "[t]he phrase `state-wide minimum standards' clearly contemplates the possibility of additional restrictions[,].... [and] the reference to more restrictive local rules contemplates their existence." Id.
¶ 33 Here the majority pulls express concurrent jurisdiction out of a magician's hat. Unlike the fireworks law in Brown, the MHLTA does not contemplate more restrictive rules or state-wide minimum standards, nor does it explicitly discuss "`local rules adopted by local authorities.'" Brown, 116 Wash.2d at 560, 807 P.2d 353 (emphasis omitted) (quoting RCW 70.77.250(4)).
¶ 34 Instead the majority selects passing references in statutes addressing landlord-tenant relationships to conjure up explicit concurrent jurisdiction. At most, the references to city ordinances in RCW 59.20.080 and RCW 59.20.130 regulate the landlord-tenant relationship between RV tenants and park managers after the tenancy has been formed. RCW 59.20.080[6] contemplates termination of leases for mobile home park residents. RCW 59.20.130[7] lists landlord duties under the MHLTA.[8] It may be that the legislature intended tenants of recreational vehicles to adhere to local landlord-tenant regulations and ordinances, but nowhere do the state laws confer express concurrent jurisdiction over initial RV placement in mobile home parks.
¶ 35 The majority erroneously proclaims these passing references in the MHLTA to be an explicit grant of concurrent jurisdiction. This claim facilitates the majority's dodge of important legislative history. In reality the legislature is silent as to its intent to occupy the field of RV placement in mobile home parks. However, under well-established precedent, when the legislature is silent, courts look to the purposes, facts, and circumstances behind the law. See Brown, 116 Wash.2d at 560, 807 P.2d 353. Those factors suggest the legislature intended to preempt the field of RV placement in mobile home parks by necessary implication.
¶ 36 The legislature recently affirmed its intention to preserve affordable housing in mobile home parks:
Manufactured/mobile home communities provide a significant source of home ownership opportunities for Washington residents. However, the increasing closure and conversion of manufactured/mobile home communities to other uses, combined with increasing mobile home lot rents, low vacancy rates in existing manufactured/mobile home communities, and the extremely high cost of moving homes when manufactured/mobile home communities close, increasingly make manufactured/mobile home community living insecure for manufactured/mobile home tenants.
Laws of 2008, ch. 116, § 1(1)(a). The legislature further recognized that "[m]any tenants who reside in manufactured/mobile home communities are low-income households and senior citizens and are, therefore, those residents most in need of reasonable security...." Id. § 1(1)(b). Other legislative findings provide:
[I]t is the intent of the legislature, in order to maintain low-cost housing in mobile home parks to benefit the low income, elderly, poor and infirmed, to encourage and facilitate the conversion of mobile home parks to resident ownership, to protect low-income mobile home park residents *1047 from both physical and economic displacement....
RCW 59.22.010(2). Pasco's attempt to dislocate these individuals flies in the face of express legislative intent.
¶ 37 The majority distorts this same legislative intent to claim Pasco's ordinance preserves mobile home communities for low-income households. Majority at 1041. The legislature clearly attempted to make housing reasonably secure and stable for low-income households. Evicting RVs from mobile home parks will have the opposite effect by saddling residents with the expense, stress, and inconvenience of being forced to relocate to "more appropriate venues such as RV parks." Id. at 1041. In the likely event RV parks are unaffordable or unavailable to some uprooted individuals, the remaining alternativese.g., transiency, homelessness, and squattingachieve the opposite of the legislature's intent, not to mention common sense.
¶ 38 Additionally the majority points out different "safety and maintenance concerns" between mobile/manufactured homes and RVs to suggest these differences support segregating the structures into separate communities. Majority at 1041. The majority's argument is as unconvincing as it is inapposite. While the different structures must comply with different construction and sanitary standards, the bottom line remains that both manufactured/mobile homes and RVs used as primary residences provide suitable homes for those in need.[9] The legislature has authorized all of these structures in mobile home parks. The majority's analysis improperly emphasizes uniformity of community over the legislature's express intent to facilitate homes for low income individuals. The legislature's inclusion of both RVs and mobile/manufactured homes in the same mobile home parks unequivocally demonstrates its will that all should receive equal footing therein, notwithstanding structural differences.
¶ 39 Moreover the broad spectrum of statutes addressing mobile homes speaks to the legislature's occupation of the field by necessary implication. Lawson points to a range of state activity in the field including, to pick a few examples, an office of manufactured housing, RCW 59.22.050; mandatory mobile home park registration with the State, RCW 59.30.050; and a state-maintained database of mobile home parks, RCW 59.30.060. The State has exercised vast authority over construction standards for mobile homes, RVs, and park trailers. See RCW 43.22.410. The State controls the nature of mobile home tenancies. See ch. 59.20 RCW. As articulated above, the State has banned discrimination against RV tenants in mobile home parks. The amendments to RCW 35.21.684, 35A.21.312, and 36.01.225 add significant cornerstones to the legislature's foundation preempting the field. With every additional regulation regarding mobile home parks, the State takes a greater role at the expense of the cities. The size, shape, and scope of the State's involvement in mobile homes demonstrate preemption of the field through necessary implication. This is a mandate of our constitution, but it is one our majority today ignores.
¶ 40 I dissent.
WE CONCUR: ALEXANDER and J.M. JOHNSON, JJ.
FAIRHURST, J. (concurrence in dissent).
¶ 41 I agree with the majority on one issue and the dissent on the second issue. Ultimately, I concur with the dissent in the result.
¶ 42 I agree with the majority that the legislature did not intend the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, to preempt the field of mobile home tenancy regulation. The MHLTA's references to local ordinances[1] demonstrate that cities enjoy concurrent jurisdiction with the State.
*1048 ¶ 43 However, I agree with the dissent that former Pasco Municipal Code 25.40.060 (2005), which bans recreational vehicles (RVs) from mobile home parks and forces Paul Lawson to evict his tenants, conflicts with the MHLTA. The majority strains to harmonize the two laws, arguing that the MHLTA does not confer a right to site RVs in mobile home parks but merely "regulates recreational vehicle tenancies, where such tenancies exist." Majority at 1043. However, the MHLTA permits Lawson to choose whether or not to rent space to persons permanently residing in RVs. Pasco therefore prohibits what the MHLTA permits. In addition, the MHLTA's reference to "park models"[2] reveals a legislative assumption that certain RV tenancies exist and will continue to exist in mobile home parks. If cities were to ban all such tenancies, they would thwart legislative intent to regulate them. Pasco's ordinance therefore directly and irreconcilably conflicts with the MHLTA.
NOTES
[1] After we accepted review, the legislature passed Engrossed House Bill 1227, an amendment to RCW 35.21.684, RCW 35A.21.312, and RCW 36.01.225, all of which address discrimination in zoning. The effect of these changes is not before us, so we do not address it here.
[2] RCW 59.20.080(1) reads in pertinent part:

A landlord shall not terminate or fail to renew a tenancy of a tenant or the occupancy of an occupant, of whatever duration except for one or more of the following reasons:
. . . .
(d) Failure of the tenant to comply with local ordinances and state laws and regulations relating to mobile homes, manufactured homes, or park models ...
"Park model" is defined in RCW 59.20.030(14) as a "recreational vehicle intended for permanent or semi-permanent installation and ... used as a primary residence."
RCW 59.20.130(1) lists the landlord's duties under the MHLTA, which include the duty to "[c]omply with codes, statutes, ordinances, and administrative rules applicable to the mobile home park...."
[3] For example, the legislature stated the following:

(a) Manufactured/mobile home communities provide a significant source of homeownership opportunities for Washington residents. However, the increasing closure and conversion of manufactured/mobile home communities to other uses, combined with ... low vacancy rates in existing ... communities ... increasingly make manufactured/mobile home community living insecure for manufactured/mobile home tenants.
. . . .
(c) The preservation of manufactured/mobile home communities:
. . . .
(iv) Should be a goal of all housing authorities and local governments.
Laws of 2008, ch. 116, § 1(1).
[1] On December 21, 2009 Pasco's City Council adopted an ordinance to delete its prohibition and, instead, allow RVs occupied as primary residences in mobile home parks. See Pasco City Ordinance 3951 (2009); PMC 25.40.020; PMC 19.24.080.
[2] The legislature passed Engrossed House Bill 1227 in early March and April 2009 (the House voted 88-7 and the Senate unanimously approved 44-0), Governor Gregoire signed it April 13, 2009, and it became effective July 26, 2009 as Laws of 2009, ch. 79 (entitled "Recreational VehiclesPrimary Residences").
[3] The definition of "manufactured/mobile home community" in chapter 35 RCW is identical to the definition in the MHLTA. See RCW 35.21.684(5).
[4] RCW 35A.21.312(3) applies to code cities: "[A] code city may not adopt an ordinance that has the effect, directly or indirectly, of preventing the entry or requiring the removal of a recreational vehicle used as a primary residence in manufactured/mobile home communities."
[5] The House Bill Report for Engrossed House Bill 1227 notes Pasco's ordinance specifically.
[6] A landlord shall not terminate or fail to renew a tenancy of a tenant or the occupancy of an occupant, of whatever duration except for one or more of the following reasons:

. . . .
(d) Failure of the tenant to comply with local ordinances and state laws and regulations relating to mobile homes, manufactured homes, or park models or mobile home, manufactured homes, or park model living within a reasonable time after the tenant's receipt of notice of such noncompliance from the appropriate governmental agency.
RCW 59.20.080(1).
[7] It shall be the duty of the landlord to:

(1) Comply with codes, statutes, ordinances, and administrative rules applicable to the mobile home park.
RCW 59.20.130.
[8] The duty clearly includes not to discriminate against RV tenants under Laws of 2009, chapter 79.
[9] The majority inaccurately claims the "unique needs" of RVs are not met by mobile home parks. Majority at 1041. In fact state statutes require RVs used as primary residences to meet applicable fire and safety codes, plus have an internal shower and toilet or, in the alternative, be sited in a mobile home park that provides those services. See, e.g., RCW 35.21.684(4)(a)-(c).
[1] RCW 59.20.080(1)(d), (i).
[2] A "park model" is an RV that is "intended for permanent or semi-permanent installation and... used as a primary residence." RCW 59.20.030(14).