## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| RENTAL HOUSING ASSOCIATION OF WASHINGTON,<br><br>     Appellants,<br><br>     v.<br><br>CITY OF FEDERAL WAY, a Washington municipal corporation,<br><br>     Respondents. | No. 83327-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

ANDRUS, C.J. — Rental Housing Association of Washington (RHA) challenges a 2019 citizens' initiative requiring landlords to have good cause to terminate a tenancy or to refuse a lease renewal and prohibiting discrimination against certain community members, such as health care providers and first responders, within the City of Federal Way (City). RHA argues the initiative is invalid because the city attorney refused to determine the initiative's appropriateness before it was placed on the ballot, as required by city ordinance. RHA also contends the initiative violates the single subject rule and impermissibly covers administrative, rather than legislative, topics beyond the scope of the City's initiative power. We reject these arguments and affirm the summary judgment dismissal of RHA's claims.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 83327-8-I/2

## FACTS

In June 2019, the Washington Community Action Network (Washington CAN) submitted a petition to the City of Federal Way asking the city council to pass an ordinance requiring landlords to show good cause before evicting a tenant, along with other tenant protections. Pursuant to Federal Way Revised Code (FWRC) 1.30.040, the city clerk forwarded it to the city attorney for a determination as to the appropriateness of the initiative topic.

On July 3, 2019, the city attorney declined to issue the determination required under FWRC 1.30.040 because, in his opinion, to do so would violate state law in two respects. First, the city attorney concluded that "Washington courts have long held that reviewing the appropriateness of a proposed initiative is exclusively a judicial function and not a role for other governmental actors." Second, he concluded a determination on the appropriateness of the initiative topic would violate RCW 42.17A.555's prohibition on the use of public facilities for the promotion or opposition of ballot propositions.

On July 16, 2019, the city council passed resolution 19-766, placing the initiative on the November ballot.[1] The initiative passed in the November 5, 2019, general election and is now codified as Federal Way Revised Code (FWRC) chapter 20.05.

Part one of the ordinance contains several findings related to the homelessness crisis in Federal Way and the impact of evictions on this crisis. Part

---

[1] That same month, RHA filed a complaint for declaratory and injunctive relief, writ of mandamus, writ of prohibition, and writ of certiorari, seeking to prevent the City from placing the initiative on the ballot. The trial court denied RHA's request for pre-election injunctive relief, concluding that RHA had not demonstrated irreparable harm or a clear right to relief. RHA did not appeal that ruling.

two, entitled "Requiring Landlords to Comply with Tenant Protection of Laws and Show Good Cause Before Evicting a Tenant," creates a defense to eviction where the landlord lacks good cause and limits "good cause" to a set of specific listed situations.[2]  Part three, entitled "Prohibiting Retaliatory Evictions," prohibits evictions "against a tenant for asserting rights or defenses afforded by this chapter or under another tenant protection law."  Part four prohibits discriminatory evictions based upon a tenant's status as a member of the military, first responder, senior, family member, health care provider, or educator.  Part five extends the good cause requirement and anti-discrimination protections to lease renewals.  Part six imposes penalties for violating the ordinance and sets up procedures to enforce its protections.  Part seven contains definitions of key terms used in the ordinance.  Part eight contains miscellaneous provisions, including notice requirements and a provision prohibiting waiver of the ordinance's protections.

RHA brought this action seeking a judicial determination that the initiative is invalid on various constitutional grounds.  Washington CAN intervened with the consent of the parties as the initiative's sponsor.  RHA then moved for partial summary judgment on its claim that the City violated FWRC chapter 1.30 by failing to issue a determination of validity before placing the initiative on the ballot, its claim that the initiative violates the single subject rule set out in RCW 35A.12.130, and its claim that three sections of the initiative exceed the initiative powers by adopting administrative, rather than legislative, provisions.  The City cross-moved

---

[2] Good cause includes the failure to pay rent, a material breach of non-monetary provisions of the rental agreement, waste, unlawful entry without permission of the owner, the landlord's intent to remove the unit from the rental market, the refusal by a tenant to execute a new rental agreement after expiration of the prior agreement, and remaining in possession after receiving a 30-day notice to quit for chronic, unexcused and unjustified failure to pay rent.

for partial summary judgment, seeking the dismissal of the single subject rule claim, the claim that the initiative conflicts with state law in violation of article XI of the Washington Constitution, and the claim that the initiative violates RHA's right to substantive due process in violation of article I, § 3.

The trial court denied RHA's motion and granted the City's motion. The court concluded the City's failure to adhere to its initiative procedures did not invalidate the initiative because RCW 35A.11.100 "establishes field preemption with respect to the initiative process." The court further held that the initiative did not violate the single subject rule and fell within the legislative powers of the City and did not constitute administrative matters outside the scope of local initiative powers. The court also granted summary judgment for the City on RHA's substantive due process claim but reserved ruling on its void for vagueness claim. RHA voluntarily dismissed all remaining claims without prejudice and appealed.[3]

ANALYSIS

Standard of Review

We review a summary judgment order on the validity of an initiative de novo. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). We engage in the same inquiry as the trial court. *Id.*

Conflict Preemption

RHA first contends the initiative is invalid because the City failed to follow its own procedures before placing it on the ballot. Because Federal Way's

---

[3] Left unresolved were RHA's void for vagueness claim and the claims that the initiative constitutes an unlawful taking and/or damaging of property under article I, § 16 of the Washington Constitution, and violates the impairment of contracts clause of article I, § 23 of the Washington Constitution.

- 4 -

ordinance requiring the city attorney to determine an initiative's validity irreconcilably conflicts with state law reserving that power to the courts, state law preempts the city ordinance and the city attorney's action does not invalidate the initiative.

Federal Way is a noncharter code city governed by the Optional Municipal Code, RCW Title 35A. RCW 35A.11.080 permits such cities to "provide for the exercise in their city of the powers of initiative and referendum." Pursuant to this authority, Federal Way has adopted ordinances for submitting initiatives and referendums for placement on the ballot. FWRC 1.30.010.

FWRC 1.30.030 provides:

Ordinances may be initiated by petitions of electors of the city. If any individual, or group of individuals, desires to petition the council to enact a proposed measure, that individual or group shall file in the office of the city clerk five printed or typewritten copies of the measure proposed, accompanied by the name, post office and residence address of the proposer.

FWRC 1.30.040 provides:

Upon filing of the proposed initiative measure, the city clerk shall assign a number to each such initiative petition and transmit one copy of the measure proposed, bearing such number, to the city council, the mayor, and to the city attorney. Within five days after the receipt of the initiative measure and this request, the city attorney shall issue a determination as to the appropriateness of the topic of the initiative measure as defined by this chapter. In the event the initiative measure is determined valid pursuant to this chapter, and within 14 days after the receipt of an initiative measure, the city attorney shall formulate therefor and transmit to the city clerk, the city council, the mayor, and the individual or group proposing such a measure, an initiative statement in the form of a question containing the essential features of the measure.

(Emphasis added.) Under FWRC 1.30.160:

If the petition accompanying the proposed ordinance is signed by the registered voters in the city as required by state law and, if it contains

- 5 -

a request that, unless passed by the city council, the ordinance be submitted to a vote of the people, the council shall either:

(1) Pass the proposed ordinance without alteration within 45 days after the city clerk's certificate that the number of signatures on the petition is sufficient; or

(2) Upon receipt of the certificate of sufficiency with the attached petition, the city clerk will notify the city council for submission of the proposed ordinance without alteration to a vote of the people at the next general election.

The city attorney declined to follow FWRC 1.30.040 before the city council voted to place the initiative on the ballot because he believed the ordinance conflicted with Washington law. He was correct.

State law preempts a local ordinance in one of two ways: when state law occupies the field being regulated, leaving no room for concurrent jurisdiction, or when a conflict exists such that the state law and the ordinance cannot be harmonized. *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010). The party arguing the invalidity of an ordinance (in this case, the City) bears the burden of establishing preemption. *Cannabis Action Coalition v. City of Kent*, 183 Wn.2d 219, 226, 351 P.3d 151 (2015).

Under our conflict preemption precedents, a state law preempts a local ordinance "when an ordinance permits what state law forbids or forbids what state law permits." *Lawson*, 168 Wn.2d at 682. State law preempts an ordinance if the ordinance directly and irreconcilably conflicts with the state law. *Id.*

There is a direct and irreconcilable conflict between Federal Way's requirement that the city attorney determine the validity of any initiative before forwarding it to the clerk to put on the ballot and our jurisprudence on the authority of local officials to engage in this type of initiative gatekeeping. In *Philadelphia II*

*v. Gregoire*, 128 Wn.2d 707, 714, 911 P.2d 389 (1996), our Supreme Court examined whether the attorney general could refuse to prepare a ballot title and summary for a proposed initiative in violation of former RCW 29.79.040's command to do so. *Id.* at 712-13. Attorney General Gregoire argued that she did not need to follow the statutory process when she concluded the initiative in question exceeded the scope of initiative power. *Id.* at 714. The Supreme Court disagreed, reasoning that only the courts may "review the substance of a proposed initiative to determine whether it exceeds the scope of initiative power described in article II, section 1, of the Washington State Constitution." *Id.* Accordingly, "[I]f the Attorney General believes an initiative exceeds the scope of the initiative power, she should prepare a ballot title and summary in accordance with her statutory duty and then seek an injunction to prevent the measure from being placed on the ballot." *Id.* at 715-16.

In *Eyman v. McGehee*, 173 Wn. App. 684, 294 P.3d 847 (2013), this court followed *Philadelphia II* to hold that local officials have no authority to decide which initiatives are legally valid and which are not. In that case, a Redmond city clerk decided not to transmit to the county auditor an initiative petition invalidating the city's automated traffic safety camera system. *Id.* at 687-88. The clerk argued that she had no duty to do so because this court had held in *American Traffic Solutions v. City of Bellingham*, 163 Wn. App 427, 260 P.3d 245 (2011), that an initiative regarding automated traffic cameras was beyond the initiative powers of Title 35A RCW. The clerk contended she had no authority to file the initiative based on that legal ruling. *Id.* at 692. This court disagreed and held that "the determination of the validity of an initiative is 'exclusively a judicial function' " *Id.*

at 692 (quoting *Philadelphia II*, 128 Wn.2d at 714), and "not a role for other governmental actors." *Id.* at 690.

Federal Way's city attorney correctly interpreted this case law to conclude that he had no authority to render an opinion on the validity of the initiative or to act as a gatekeeper to decide which initiatives could move to the next stage in the process and which could not.

RHA attempts to distinguish *Philadelphia II* and *McGehee*, arguing that while a public official may not refuse to place an initiative on the ballot, neither case forecloses the city attorney from expressing a legal opinion on the validity of an initiative, as that act would not impact whether the initiative is actually put to a vote. This argument, however, is inconsistent with the procedure outlined in the city's code. The plain language of FWRC 1.30.040 states that the city attorney may only forward an initiative to the city council if he determines it to be "valid." The ordinance's use of the word "determination" further supports this conclusion. A "determination" is "the act of deciding something officially, . . . a final decision by a court or administrative agency." BLACK'S LAW DICTIONARY 564 (11th ed. 2019). The ordinance required the city attorney to make a binding and final decision on the validity of the proposed initiative. Such authority is beyond the power of the city attorney under *McGehee* and *Philadelphia II,* rendering the ordinance in conflict with state law and unenforceable.

Because the Federal Way initiative procedure irreconcilably conflicts with state law, the city attorney correctly refused to follow it. The initiative cannot be invalidated based on noncompliance with FWRC 1.30.040.

No. 83327-8-I/9

<u>Single Subject Rule</u>

RHA next contends the initiative violates the single subject rule. Because the various parts in the initiative are all germane to the initiative's general title and to each other, we reject this argument.

"No ordinance shall contain more than one subject and that must be clearly expressed in its title." RCW 35A.12.130. This statutory rule is an extension of article II, section 19 of our state constitution, applying to statewide initiatives, and we look to cases interpreting that constitutional provision in evaluating a single subject challenge to a municipal ordinance. *Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 781-82, 357 P.3d 1040 (2015).

Initiatives are presumed to be constitutional and the party challenging the validity of an initiative has the burden of demonstrating its unconstitutionality. *Am. Hotel & Lodging Assoc. v. City of Seattle*, 6 Wn. App. 2d 928, 937, 432 P.3d 434 (2018). Only where there exists a rational relationship between the provisions of the initiative and the initiative's subject "can we be certain voters were not required to vote for an unrelated subject of which the voters disapproved in order to pass a law pertaining to a subject of which the voters were committed." *City of Burien v. Kiga*, 144 Wn.2d 819, 826, 31 P.3d 659 (2001).

In determining whether an ordinance violates the single subject rule, Washington courts first look to the provision's title for guidance. *Filo Foods*, 183 Wn.2d at 782. A ballot title may be general or restrictive. A general title is broad, comprehensive, and generic, as opposed to a restrictive title, which is specific and narrow. *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 207-08, 11 P.3d 762 (2000). If the ballot title is restrictive, the provisions of the initiative must all

- 9 -

No. 83327-8-I/10

fall "fairly within" the restrictive language. *State ex rel. Wash. Toll Bridge Auth. v. Yelle*, 32 Wn.2d 13, 26, 200 P.2d 467 (1948). Where a ballot title is general, only rational unity among the matters covered in the initiative need exist. *Kiga*, 144 Wn.2d at 825-26. Rational unity exists when the matters within the body of the initiative are germane to the general title and to one another. *Id. at 826*.

The parties agree the initiative's ballot title in this case is general. We therefore apply the "rational unity" test to determine whether the initiative's provisions are germane to the ballot title and germane to each other. *See Kiga*, 144 Wn.2d at 826; *Amalgamated*, 142 Wn.2d at 217. While rational unity must exist among all matters included within a measure and with the general topic expressed in the title, an initiative can embrace several incidental subjects or subdivisions "so long as they are related." *Kiga*, 144 Wn.2d at 826.

The ballot title to this initiative stated:

City of Federal Way Citizen Initiative No. 19-001 concerns enacting rental requirements for landlords and rental rights for tenants.

This citizen initiative would enact an ordinance to amend the Federal Way Revised Code to require landlords to comply with existing rental laws; to establish obligations and duties for landlords, and defenses and rights for tenants, regarding: requirements that landlords must meet before evicting tenants, retaliatory actions, rental agreements, and rental agreement renewals; to create classes of tenants afforded additional rental rights; and to adopt penalties for landlords and procedures to enforce the measure.

Even though the second paragraph of this title lists out the initiative's provisions, the general statement in the first paragraph, preceding the list, is "sufficiently broad to place voters on notice of its contents." *Filo Foods*, 183 Wn.2d at 784. All of the provisions are rationally related to this general topic expressed in the ballot title as they all impose rental requirements for landlords and grant rental rights to tenants.

- 10 -

RHA contends that part four of the initiative, establishing special treatment for certain members of the Federal Way community, described by RHA as "societal heroes," is too narrow to be rationally related to the broader good cause provisions applicable to all tenants. RHA relies on *Kiga* and *American Hotel* to support this argument. We conclude that the initiative here is less analogous to *Kiga* and *American Hotel* and more analogous to the initiative upheld by the Supreme Court in *Filo Foods.*

In *Kiga*, the Supreme Court evaluated I-722, an initiative that provided tax relief in the form of nullification of various tax increases, authorized a onetime tax refund, changed the method of assessing property taxes, and imposed a two percent cap on property tax increases. 144 Wn.2d at 823. The court invalidated the initiative as a violation of the single subject rule because the subjects within it were not germane to one another. *Id.* at 827. It based this ruling on the fact that the nullification of various tax increases was unnecessary and unrelated to the permanent and systematic changes in property tax assessments. *Id.* And the refund provisions encompassed more than property taxes and implicated utility charges, hospital charges, city moorage rates, park district admissions, and many other monetary charges. *Id.* Finally, changing the method by which local governments determined property taxes did not necessitate a refund of all of the tax increases that voters had not approved. *Id.* The court deemed the combination of these various tax provisions to be the "kind of logrolling of unrelated measures [that] violates the fundamental principle embedded in article II, section 19." *Id.* at 827-28.

In *American Hotel*, this court held that an initiative regulating hotels and hotel employees violated the single subject rule. 6 Wn. App. 2d at 941. The initiative at issue in that case had four distinct purposes contained in the challenged initiative:

> Part 1 is intended to protect certain hotel employees from violent assault and sexual harassment. SMC 14.25.020. Part 2 is intended to protect hotel employees from on-the-job injuries arising out of heavy lifting, repetitive tasks, and chemical exposure. SMC 14.25.070. Part 3 is intended to improve hotel workers' access to affordable medical care. SMC 14.25.110. And part 4 is intended to provide job security to low income hotel workers when there is a change in hotel ownership. SMC 14.25.130.

6 Wn. App. 2d at 941-42. We held that the four distinct purposes were unrelated to each other. *Id.* at 944. The court said:

> [R]equiring hotels to maintain a list of people who have been accused of sexually harassing hotel employees is unrelated to limiting the number of square feet a hotel worker can be required to clean in an eight-hour period without being paid overtime, or requiring a hotel to create a seniority list from which a new owner must hire employees for a period of time after a change in ownership. Part 1 of the initiative does not have, as its purpose, the same purpose as part 2, 3, or 4.
> . . . .
> Even assuming Part 1's guest registry requirements and Part 2's hazardous chemicals restrictions are related to the same goal of reducing on-the-job injuries, it is difficult to see how the guest registry provision is germane to providing hotel workers with employment security for a set period of time after a hotel changes ownership.

*Id.* at 943-44.

In contrast, in *Filo Foods*, our Supreme Court rejected a single subject challenge to an initiative establishing a variety of labor standards protecting employees in the hospitality and transportation industries in the city of SeaTac. 183 Wn.2d at 784-85. These protections included, among other labor standards, a $15 hourly minimum wage, paid sick time, and a 90-day worker retention policy

imposed on successor employers. *Id.* at 783. The court concluded that the provisions of that initiative were germane to one another because all of the worker protections advanced the same purpose: the establishment of minimum employee benefits, including job security. *Id.* at 785.

Unlike *American Hotel* and more analogous to *Filo Foods,* Federal Way's initiative has a single goal—reducing homelessness resulting from evictions. The initiative's identified purpose is "[t]o protect families, promote community, stabilize the rental market, and reduce homelessness." Parts two, three and four create defenses tenants can raise to avoid eviction, each of which would advance this identified goal.

Moreover, the various eviction defenses are rationally related to each other in a way not present in *American Hotel* because the defenses may be factually intertwined. For example, under part two, a tenant may raise as a defense to eviction the lack of good cause to evict. The landlord may argue, in response, that the eviction is permissible because the tenant breached a non-monetary term of the rental agreement, one of the permissible bases for eviction. The tenant may counter that argument by alleging that the true motivation for the eviction is not a purported breach of contract, but instead the tenant's status as a senior citizen, a defense to eviction under part four, or the landlord's retaliation against the tenant for having recently exercised their rights under the law, a defense to eviction under part three. Because defenses set out in parts two, three and four can conceivably be factually intertwined and all raised in the same unlawful detainer proceeding, they are much more germane to each other than the disparate provisions of the City of Seattle initiative in *American Hotel*. For these reasons, the initiative here is

- 13 -

more analogous to the worker protection initiative affirmed in *Filo Foods* than the tax provisions invalidated in *Kiga* or the initiative invalidated in *American Hotel*. The initiative does not violate the single subject rule.

Legislative Nature of Initiative

RHA finally argues that the initiative exceeds the scope of the City's initiative power because parts six, seven, and eight address administrative issues, rather than legislative ones. We reject this argument as well.

The initiative power of the people of Washington is inherently limited to matters that are legislative in nature. *Ruano v. Spellman*, 81 Wn.2d 820, 823, 505 P.2d 447 (1973). "[A]dministrative matters, particularly local administrative matters, are not subject to initiative or referendum." *City of Port Angeles v. Our Water–Our Choice!*, 170 Wn.2d 1, 8, 239 P.3d 589 (2010). "Generally speaking, a local government action is administrative if it furthers (or hinders) a plan the local government or some power superior to it has previously adopted." *Id.* at 10.

Washington courts look to several factors to distinguish between administrative and legislative measures, including whether an initiative is permanent and general in character or temporary and specific, and whether the initiative prescribes a new policy or merely pursues or implements a plan already adopted. *Glob. Neigh. v. Respect Wash.*, 7 Wn. App. 2d 354, 394 434 P.3d 1024, *rev. denied*, 193 Wn.2d 1019, 448 P.3d 69 (2019).

RHA challenges parts six through eight on the basis that they do not declare new policy, but merely carry out the policy set out in the initiative's preceding provisions. RHA argues that these "administrative details" should have been left for the city council and their inclusion renders the entire initiative invalid. This

- 14 -

argument misapplies the administrative nature test. "In distinguishing between administrative and legislative proposals, we look at the fundamental and overriding purpose of the initiative, rather than mere incidentals to the overriding purpose." *Glob. Neigh.*, 7 Wn. App. 2d at 395. RHA's contention that the initiative contains incidental administrative details is immaterial to the question of whether the initiative overall is legislative or administrative in nature.

RHA does not dispute that the overriding purpose of the initiative is legislative in nature and concedes that no Washington appellate court has held that an initiative which establishes new legislative policy and includes provisions for enforcing that policy, violates the ban on administrative initiatives. We reject RHA's invitation to tread new ground. Parts six, seven and eight of the landlord-tenant ordinance do not exceed the scope of the City's initiative power.

Affirmed.[4]

Andrus, C.J.

WE CONCUR:

Smith, A.C.J.

Mann, J.

---

[4] RHA also assigns error to the denial of its motion to strike the declaration of the City's expert, Edmund Witter. The City submitted Witter's declaration to defeat RHA's substantive due process claim. Because RHA does not challenge the dismissal of its substantive due process claim, the admissibility of the Witter declaration would have no future impact on this case and is therefore moot. *See Keene Valley Ventures, Inc. v. City of Richland*, 174 Wn. App. 219, 227, 298 P.3d 121 (2013) (argument about a ruling that will have no future impact in case is essentially a moot question).