# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| EMERALD ENTERPRISES, LLC, and JOHN LARSON, | | No. 47068-3-II consolidated with No. 49395-1-II |
| Appellants, | | |
| v. | | |
| CLARK COUNTY, a Washington State County, | | PUBLISHED OPINION |
| Respondent. | | |

MELNICK, J. — At issue in this case is whether Clark County can lawfully ban the retail sale of marijuana within its unincorporated areas.[1] Emerald argues that a Clark County ordinance (Ordinance) prohibiting the retail sale of marijuana in its unincorporated areas violates article XI, section 11 of the Washington Constitution because it forbids what Washington's Uniform Controlled Substances Act (UCSA) permits, thwarts the state statutory scheme's legislative purpose, and exercises power the UCSA did not confer on local governments. Emerald also contends the Ordinance is either expressly or impliedly preempted by chapter 69.50 RCW. We uphold the Ordinance.

---

[1] This consolidated appeal is from two cases. In one, Emerald Enterprises, LLC and John M. Larson (collectively Emerald) appeal the Cowlitz County Superior Court's ruling that Clark County's marijuana ban is not preempted by Washington's drug laws. Second, Emerald appeals the Clark County Superior Court's affirmation of the Clark County Hearing Examiner's final order which ordered Emerald to cease all sales of marijuana and marijuana products and revoked Emerald's building permit.

FACTS

I.  BACKGROUND

On November 6, 2012, Washington voters approved Initiative 502 (I-502). LAWS OF 2013, ch. 3. The expressed purposes of I-502 included allowing law enforcement to "focus on violent and property crimes," generating "new state and local tax revenue for education, health care, research, and substance abuse prevention," and taking "marijuana out of the hands of illegal drug organizations." Initiative 502, LAWS OF 2013, ch. 3, § 1.

The legislature subsequently codified I-502 within Washington's Uniform Controlled Substances Act (UCSA).[2] Former ch. 69.50 RCW (2014). As amended, the UCSA legalized[3] the limited production, processing, and sale of recreational marijuana to persons twenty-one years and older. Former RCW 69.50.360 (2014). It also created a regulatory state licensing system through the Washington State Liquor and Cannabis Board (Board). Former RCW 69.50.325-.369 (2014).

The Board adopted rules governing marijuana sales. Former ch. 314-55 WAC (2014) (adopted pursuant to statutory authority provided at RCW 69.50.345). In October 2013, the Board established the application requirements for marijuana retailer licenses. Former WAC 314-55-015 to -050, -079, -081 (2014). After determining the maximum number of stores per county, the Board held a lottery for licenses from prospective retailers. Former WAC 314-55-081(1) (2014).

---

[2] In this opinion we refer to "I-502" as the initiative voted on by the public. "UCSA" refers to the relevant sections of the Washington statutes that codified I-502. The parties do not distinguish between the two. We use the broader term "UCSA" whenever reasonably likely to reflect the parties' arguments because I-502 has been amended more than once since the voters passed it.

[3] The Washington State Liquor and Cannabis Control Board's website says, "Initiative 502 legalized marijuana use for adults however there are still a number of restrictions." https://lcb.wa.gov/mj-education/know-the-law. While some may use the term "decriminalize," we use the term utilized by the Board.

Before granting any license, the Board conducted mandatory background checks, including any history of administrative violations. Former WAC 314-55-020(3) (2014). Cities, counties, or other authorities could object to a business receiving a license. Former WAC 314-55-020(1), -050(9) (2014). However, the final decision to issue a retail license remained with the Board. Former WAC 314-55-050 (2014).

In January 2014, at the Board's request, the Attorney General's Office (AGO) issued an opinion regarding the authority of local governments to ban marijuana businesses.[4] The AGO opinion analyzed both field and conflict preemption, and opined that state law did not preempt local government action in this area. According to the AGO, local governments retained the authority to enact local bans on marijuana sales.

On May 27, 2014, Clark County (County) passed an Ordinance, which banned, as applicable here, the retail sale of recreational marijuana within unincorporated Clark County. Clark County Code (CCC) 40.260.115.[5] It forbade the sale of retail recreational marijuana so long as the federal government listed marijuana as a controlled substance. CCC 40.260.115(B)(4). It did not do the same for medical marijuana. CCC 40.260.115(B)(3).

Notwithstanding the Ordinance, Emerald applied to the Board for a retail license to sell marijuana in the unincorporated area of Clark County. The County objected. RCW 69.50.331(7)(b). Nonetheless, in September 2014, the Board issued Emerald's license for the retail sale of recreational marijuana.

---

[4] Clerk's Papers (CP) at 294-302 (2014 Op. Att'y Gen. No. 2).

[5] The Ordinance has other components. This opinion, refers to the retail sale of recreational marijuana unless otherwise noted.

II.     PROCEDURAL FACTS

A.      Cowlitz County Proceeding

Emerald challenged the Ordinance and sought declaratory and injunctive relief in Cowlitz County Superior Court.  Emerald argued that the UCSA preempted the Ordinance.  Emerald and the County filed cross motions for summary judgment on the preemption issue.  The AGO intervened on behalf of the County.  In December 2014, the superior court ruled that the UCSA did not preempt the Ordinance.  The trial court granted summary judgment in favor of the County and the AGO.  This appeal followed.[6]

B.      Clark County Proceeding

With the 2014 appeal stayed, Emerald moved ahead with development plans.  In September 2015, Emerald applied for a building permit to make improvements to the retail space it rented in a commercial building in the County.  Emerald described the proposed use as "'General retail . . . . Business will sell novelties, crafts, collectibles, and general merchandise.'"  CP (49395-1) at 24.  On December 2, 2015, the County issued Emerald a building permit authorizing the planned improvements.

Emerald then began Board-licensed retail sales of marijuana in the County in December 2015.  By January 2016, the County became aware of Emerald's activities and ordered Emerald to cease all sales of marijuana and marijuana products.  The County also revoked Emerald's building permit.

Emerald appealed to the Clark County Hearing Examiner (Examiner), who ruled in favor of the County.  The Examiner found that Emerald sold marijuana in violation of the General

---

[6] This court stayed Emerald's appeal pending the resolution of the related case.  We then consolidated the cases on appeal.

4

Commercial Zoning District, and had obtained its building permit based on a misrepresentation. Pursuant to the Land Use Petition Act (LUPA),[7] Emerald appealed to the Clark County Superior Court, which affirmed the Examiner. This appeal followed.

ANALYSIS

STATE LAW DOES NOT PREEMPT THE ORDINANCE

Emerald's consolidated appeal asserts a single assignment of error involving preemption, i.e. that the "trial court erred in finding that [the Ordinance] does not irreconcilably conflict with state law." Br. of Appellant at 2. Specifically, Emerald argues that the Ordinance violates article XI, section 11 of the Washington Constitution because it irreconcilably conflicts with the UCSA. In addition, Emerald contends that the Ordinance is either expressly or impliedly preempted by I-502 and the UCSA. We disagree.

A. Legal Principles

We review "an order granting summary judgment de novo, engaging in the same inquiry as the trial court." *Weden v. San Juan County*, 135 Wn.2d 678, 689, 958 P.2d 273 (1998). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).[8]

Emerald argues the Ordinance is preempted by state law and thus unconstitutional. Under article XI, section 11 of the Washington Constitution, counties may make and enforce all regulations that do not conflict with state law. Constitutional preemption challenges are reviewed de novo. *Watson v. City of Seattle*, 189 Wn.2d 149, 158, 401 P.3d 1 (2017).

---

[7] Ch. 36.70C RCW *et seq.*

[8] The parties do not argue that any material facts are in dispute.

B.      County Police Powers Under the Washington Constitution

In Washington, local governments wield significant regulatory powers. *See* WASH. CONST. art. XI, § 11. They derive from Article XI, section 11 which states, "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." This provision, known as "home rule," presumes that local governments are autonomous. *See Watson*, 189 Wn.2d at 166. "The scope of [a county's] police power is broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people." *State v. City of Seattle*, 94 Wn.2d 162, 165, 615 P.2d 461 (1980).

We therefore presume that the County has the regulatory authority to enact the Ordinance and the County's ordinance is valid unless preempted. WASH. CONST. art. XI, § 1; *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 225-26, 351 P.3d 151 (2015); *State v. Kirwin*, 165 Wn.2d 818, 825, 203 P.3d 1044 (2009); *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 477, 61 P.3d 1141 (2003). Because enacted ordinances are presumed constitutional, Emerald has the burden of showing unconstitutionality beyond a reasonable doubt. *Pierce County v. State*, 150 Wn.2d 422, 430, 78 P.3d 640 (2003); *Weden*, 135 Wn.2d at 693.

C.      The USCA Does Not Irreconcilably Conflict with the Ordinance

We consider an ordinance to be consistent with article XI, section 11 unless it either "prohibits what the state law permits," "thwarts the legislative purpose of the statutory scheme," or "exercises power that the statutory scheme did not confer on local governments." *Dep't of Ecology v. Wahkiakum County*, 184 Wn. App. 372, 378, 337 P.3d 364 (2014). Emerald argues that the Ordinance irreconcilably conflicts with the UCSA for all three reasons, and is therefore unconstitutional under article XI, section 11. We disagree.

6

1.      The Ordinance Does Not Prohibit What State Law Permits

Emerald contends that the Ordinance prohibits what the UCSA permits. We disagree.

A local law "must yield" to a state statute on the same subject matter if "'a conflict exists such that the two cannot be harmonized.'" *Weden*, 135 Wn.2d at 693 (quoting *Brown v. City of Yakima*, 116 Wn.2d 556,561, 807 P.2d 353 (1991)); WASH. CONST., art. XI, § 11. The focus of the inquiry is on the substantive conduct proscribed by the two laws. For example, *Kirwin* held that an ordinance may punish littering more harshly than state law because both prohibit the same underlying conduct. 165 Wn.2d at 826. No conflict exists "if the provisions can be harmonized." *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 433, 90 P.3d 37 (2004). Here, the County's local ban on retail marijuana stores can be harmonized with state law.

The UCSA legalizes, with caveats, recreational marijuana and permits its regulated sale. RCW 69.50.325 to .390. It gives the Board authority to adopt rules regarding "[r]etail outlet locations and hours of operation," RCW 69.50.342(1)(f), and requires that it promulgate rules for the licensing of retail stores. RCW 69.50.345. The licensing scheme creates the framework allowing select people to legally sell marijuana. RCW 69.50.325.

But while the UCSA permits the retail sale of marijuana, it does not grant retailers an affirmative right to sell marijuana. RCW 69.50.325(3)(a) states that "[t]here shall be a marijuana retailer's license," but does not require the issuance of licenses. RCW 69.50.354 states that retail outlets "may be licensed" by the Board, but does not require the issuance of licenses. And the general rule is that the fact that an activity can be licensed under state law does not mean that the activity must be allowed under local law. *Rabon v. City of Seattle*, 135 Wn.2d 278, 292, 957 P.2d

621 (1998); *Weden*, 135 Wn.2d at 695; *Lawson v. City of Pasco*, 168 Wn.2d 675, 682-84, 230 P.3d 1038 (2010).

Similarly, nothing in the UCSA states that a county may not prohibit retail recreational marijuana sales. RCW 69.50.354 states that the Board may determine the maximum number of retail outlets in each county, but does not set a minimum number.

The UCSA did not create a specific right to a retail license in the County, nor did it authorize retail stores in the unincorporated parts of every county. As a result, Emerald's reliance on *Parkland Light*, 151 Wn.2d 428, and *Entertainment Industries Coalition v. Tacoma-Pierce County Health Department*, 153 Wn.2d 657, 664, 105 P.3d 985 (2005), is unpersuasive.

In *Parkland Light*, a county health board resolution removed discretion from the water districts to manage the disposal of biosolids in their water systems. 151 Wn.2d at 433-34. The resolution stripped water districts of discretion granted by law. *Parkland Light*, 151 Wn.2d at 434. Emerald argues that the Ordinance in this case similarly takes away authority statutorily granted to the Board. However, the UCSA does not empower the Board to ensure that marijuana retail locations open in every jurisdiction; the law merely directs the Board to regulate sales when they occur. RCW 69.50.325, .342, .345, .354, .357. The Ordinance and the UCSA can be simultaneously enforced.

In *Entertainment Industries Coalition*, a county resolution imposed a complete smoking ban despite a state law delegating to business owners the right to designate smoking and nonsmoking areas in their establishments. 153 Wn.2d at 664. Because the resolution prohibited what state law permitted, it was struck down. *Entm't Indus. Coal.*, 153 Wn.2d at 664.

This case is different. The UCSA authorizes the Board to designate the maximum number of licenses for each county, not the exact number of stores in each jurisdiction. RCW 69.50.354.

Therefore, unlike the business owners in *Entertainment Industries Coalition*, who were granted discretion to designate smoking locations by state law and deprived of that discretion by local law, receipt of a Board license does not confer the specific right to open a retail location in a given jurisdiction.

A marijuana retailer license "shall not be construed as a license for, or an approval of, any violations of local rules or ordinances, including . . . zoning ordinances." WAC 314-55-020(15) (Board regulation). Board licensing is an additional requirement for opening a new business. We conclude the UCSA does not create a right to engage in the specific activity prohibited by the Ordinance.

### 2. Does Not Thwart Legislative Purpose

Emerald also argues that the Ordinance unconstitutionally conflicts with the UCSA because it thwarts the will of voters and the legislative purpose of the state law. Emerald contends that the intent of the law is to address marijuana distribution as a statewide concern by generating new state and local tax revenue, taking marijuana out of the hands of illegal drug organizations, and tightly regulating its distribution. While Emerald accurately summarizes the relevant statement of intent, Initiative 502, LAWS OF 2013, ch. 3, § 1, it fails to demonstrate how this purpose irreconcilably conflicts with the Ordinance.

We consider legislative purpose and intent as an integral part of the article XI, section 11 conflict analysis. An ordinance irreconcilably conflicts with state law if it "thwarts the legislative purpose of the statutory scheme." *Wahkiakum County*, 184 Wn. App. at 378. Because the UCSA began by initiative, our consideration of intent involves both the voters' intent and the legislative intent. *Roe v. TeleTech Customer Care Mgmt. (Colorado), LLC*, 171 Wn.2d 736, 746, 257 P.3d 586 (2011). Here, we construe the applicable statutes not because they are ambiguous, but to

9

determine whether the Ordinance banning marijuana sales in the County thwarts the legislative purpose.

The voters' pamphlet described I-502 by stating, "Without violating state law, people over age 21 could grow, distribute, or possess marijuana, as authorized under various types of licenses." CP (47068-3) at 152. It did not discuss an "opt out" provision for cities or counties. The "Argument For" section included the justification that "[t]reating adult marijuana use as a crime costs Washington State millions in tax dollars and ties up police, courts, and jail space. We should focus our scarce public safety dollars on real public safety threats." CP (47068-3) at 160. Furthermore, the pamphlet stated the tax money would become revenue for funding health care, research, and drug prevention, and that the law would take profit away from organized crime.

We also rely on the purpose statements expressed in the voters' pamphlet for I-502. As relevant, the purposes are to: (1) allow law enforcement resources to be focused on violent and property crimes; (2) generate new state and local tax revenue for education, health care, research, and substance abuse prevention; and, (3) take marijuana sales out of the hands of illegal drug organizations. Initiative 502, LAWS OF 2013, ch. 3, § 1.[9]

Emerald relies on *Wahkiakum County*, which concluded that a county ordinance prohibiting the application of Class B biosolids conflicted with state law. 184 Wn. App. at 377. In 1992, the legislature enacted a statewide statutory biosolids program, chapter 70.95J RCW, to be implemented and managed by the Department of Ecology (Ecology). RCW 70.95J.020. The statute authorized Ecology to regulate and permit the use, disposal, and application of Class B

---

[9] Emerald characterizes all three statements of intent as speaking to matters of "statewide, general concern." Br. of Appellant at 26. Emerald points out that if all local governments enacted ordinances like the County's, the UCSA's statewide regulatory scheme would be rendered meaningless. However, this hypothetical fact situation is not the case before us.

biosolids. RCW 70.95J.020, .025; *Wahkiakum County*, 184 Wn. App. at 379. In 2011, Wahkiakum County passed an ordinance wholly prohibiting the land application of Class B biosolids within the county. *Wahkiakum County*, 184 Wn. App. at 374.

*Wahkiakum County* decided that the ordinance conflicted with the state laws regulating the disposal and land application of biosolids, in part because allowing piecemeal regulation could thwart the intent of the legislature. 184 Wn. App. at 383. "[I]f all counties had the power to determine whether to ban land application of class B biosolids, then the entire statutory and regulatory scheme enacted to maximize the safe land application of biosolids would be rendered meaningless." *Wahkiakum County*, 184 Wn. App. at 383. Here, Emerald argues that upholding the Ordinance would similarly allow the UCSA to be "gutted by local bans." Br. of Appellant at 27.

Emerald's reliance on *Wahkiakum County* is unpersuasive because the state biosolids law and the UCSA advance distinct legislative purposes. The purpose behind the biosolids statute was to ensure that "to the maximum extent possible . . . [biosolids were] reused as a beneficial commodity." RCW 70.95J.005(2); *Wahkiakum County*, 184 Wn. App. at 382. The statute established a clear preference for disposal through reuse, such as land application, in place of incineration or disposal in a landfill. RCW 70.95J.005(2); *Wahkiakum County*, 184 Wn. App. at 382. Wahkiakum County's ordinance frustrated the state law's legislative purpose specifically because it banned the exact disposal method the state scheme sought to maximize.

The purpose of the UCSA is not to encourage the sale, production, or use of marijuana. It is unlike the statute in *Wahkiakum County*, where the legislature encouraged a specific disposal method. The UCSA allows and regulates the sale of marijuana, rather than encouraging it. This distinction is important. The ordinance in *Wahkiakum County* frustrated Ecology's mandate to

11

encourage "to the maximum extent possible" the safe disposal of biosolids through land application. RCW 70.95J.005(2); 184 Wn. App. at 382. In this case, the Ordinance frustrates no such mandate. The UCSA authorizes the Board to regulate marijuana sales. The Board has no mandate to maximize or encourage sales. *See* RCW 69.50.342, .354.

The legislature promulgated the section of the UCSA at issue to reallocate law enforcement resources, generate tax revenue, and create an alternative to the illegal drug market. Initiative 502, LAWS OF 2013, ch. 3, § 1. There is no evidence of legislative intent to regulate the location of retail stores within counties. Rather, the UCSA requires the Board to set a maximum number of retail licenses for each county, not to regulate the specific location of each store. RCW 69.50.345. The Board's own regulations clarify that retail licenses do not supersede local law, including local zoning authority. WAC 314-55-020(15). A ban on retail stores within unincorporated Clark County does not, without more, thwart the purpose and intent of the legislature.[10]

Moreover, subsequent amendments to RCW 69.50.540 strongly indicate that the legislature intended to preserve the right of local governments to ban retail stores. Former RCW 69.50.540 (2014), *amended by* LAWS OF 2017, 3rd Spec. Sess., ch. 1, § 979; LAWS OF 2015, 3rd Spec. Sess., ch. 4, § 967; LAWS OF 2015, 2nd Spec. Sess., ch. 4, § 206. In 2015, the legislature reconciled the medical and recreational marijuana statutes. LAWS OF 2015, ch. 70. The legislature also passed SUBSTITUTE H.B. 2136, 63rd Leg., Reg. Sess. (Wash. 2014), which reformed marijuana tax regulation. Former RCW 69.50.540(2)(g)(i) (2014), *amended by* LAWS OF 2015, 2d Spec. Sess.,

---

[10] Thwarting legislative purpose would be of greater concern if, as a practical matter, the ban made it very difficult or impossible for Clark County residents to legally purchase marijuana through an authorized retailer. However, this is not the case before us, nor has Emerald argued that the Ordinance has the practical effect of a county-wide ban. We note that numerous licensed retailers operate in the incorporated areas of Clark County, including in nearby Vancouver.

ch. 4, § 206. As amended, the language of RCW 69.50.540 establishes new revenue sharing guidelines:

> (i) . . . [T]he legislature must appropriate an amount equal to thirty percent of all marijuana excise taxes deposited into the general fund . . . for distribution to counties, cities, and towns as follows:
>
> (A) Thirty percent must be distributed to counties, cities, and towns where licensed marijuana retailers are physically located . . .
>
> (B) Seventy percent must be distributed to counties, cities, and towns ratably on a per capita basis. Counties must receive sixty percent of the distribution, which must be disbursed based on each county's total proportional population. *Funds may only be distributed to jurisdictions that do not prohibit the siting of any state licensed marijuana producer, processor, or retailer.*

RCW 69.50.540(2)(g)(i)(A)-(B) (emphasis added).

This amendment allows counties, cities, and towns to share in the financial benefits resulting from marijuana retail sales in their jurisdictions. Thirty percent of the tax revenue is earmarked for the jurisdictions where retail stores are physically located, returning a share of locally generated taxes to the cities and towns. RCW 69.50.540(2)(g)(i)(A). Seventy percent is distributed to counties, cities, and towns on a per capita basis, even if there are no retail locations operating within the jurisdiction. RCW 69.50.540(2)(g)(i)(B). This amendment particularly benefits counties, which receive sixty percent of this distribution based on their proportional population. These financial carrots, however, are accompanied by a stick: "[f]unds may only be distributed to jurisdictions that do not prohibit the siting of any state licensed marijuana producer, processor, or retailer." RCW 69.50.540(2)(g)(i)(B). Thus, local jurisdictions that allow retail sales receive a share of tax revenues. Jurisdictions that ban marijuana sales do not.

By expressly contemplating that local jurisdictions can "prohibit the siting of any state licensed marijuana . . . retailer[,]" the UCSA acknowledges that local governments retain zoning

13

authority over retail locations. RCW 69.50.540(2)(g)(i)(B).[11] The amendments to RCW 69.50.540 also demonstrate that the legislature did not intend to strip local governments of that authority. Instead, the revenue sharing mechanism created by RCW 69.50.540(2)(g)(i) uses financial incentives to encourage local governments to allow marijuana sales. This cooperative approach is consistent with the legislature's expressed intent to enter into a "partnership with local jurisdictions"[12] regarding marijuana policy, and strongly suggests the legislature intended to preserve the right of local governments to ban retail stores.

3.      The County Did Not Exercise Unauthorized Power

Finally, Emerald argues that the Ordinance conflicts with the UCSA because it exercises authority not conferred to local government. Emerald argues that while local regulation may be more stringent than state law, it cannot completely ban an activity permitted by state statute—and that doing so here prevents the Board from exercising its statutory authority. *See* Br. of Appellant at 28 (citing *Great W. Shows, Inc. v. City of Los Angeles*, 27 Cal. 4th 853, 867-68, 44 P.3d 120 (2002)).

As an initial matter, Emerald has framed the issue incorrectly. The issue is not whether the legislature granted the County exclusionary authority, but whether state law specifically *removes* authority that the County is presumed to possess. *See* WASH. CONST. art. XI, § 11 (counties may "make and enforce . . . all such local police, sanitary, and other regulations as are not in conflict

---

[11] Any other reading of RCW 69.50.540(2)(g)(i)(B) would render the statutory language distinguishing between jurisdictions that do and do not ban sales meaningless. *Whatcom County v. Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (courts must construe statutes such that no provision is "rendered meaningless or superfluous").

[12] LAWS OF 2015, 2d spec. sess., ch. 4, § 101 ("The legislature further finds that a partnership with local jurisdictions in this effort is imperative to the success of [competing with the unregulated illegal market and generating state revenue].").

with general laws."); *City of Seattle*, 94 Wn.2d at 165 (the police power of local government is "as extensive as that of the legislature, so long as the subject matter is local and the regulation does not conflict with general laws."). Nevertheless, an ordinance that exercises authority reserved by state law is unconstitutional. *Wahkiakum County*, 184 Wn. App. at 378.

In this case, Emerald fails to meet its burden to demonstrate unconstitutionality. The Board's authority is to license and regulate, not to guarantee that marijuana is sold in every unincorporated area in the state. As stated in *Rabon*, "[t]he fact that an activity may be licensed under state law does not lead to the conclusion that it must be permitted under local law." 135 Wn.2d at 292. This principle is more commonly applied to laws preventing conduct, not allowing it. *See Lawson*, 168 Wn.2d at 677; *Weden*, 135 Wn.2d at 694.

In *Lawson*, the owner of a mobile home park challenged a city ordinance prohibiting the placement of recreational vehicles (RVs) in the park. 168 Wn.2d at 677-78. The owner argued that the Mobile Home Landlord Tenant Act, chapter 59.20 RCW, affirmatively authorized siting RVs in mobile home parks by virtue of regulating mobile home tenancies. *Lawson*, 168 Wn.2d at 683. In rejecting this argument, *Lawson* concluded that the simple statutory "acknowledgement" that RVs may be present on mobile home parks "is not equivalent to an affirmative authorization of their presence." 168 Wn.2d at 683.

Similarly, in *Weden*, the local government adopted an ordinance prohibiting the operation of personal watercraft on all marine waters in San Juan County. 135 Wn.2d at 684-85. A coalition in favor of personal watercraft use challenged the ordinance, arguing that state vessel registration laws preempted the ordinance. *Weden*, 135 Wn.2d at 688. In upholding the ordinance, *Weden* concluded that vessel registration was "nothing more than a precondition to operating a boat. No unconditional right is granted by obtaining such registration." 135 Wn.2d at 695.

In this case, as in *Lawson* and *Weden*, the UCSA leaves the County's Article XI, section 11 police powers in place. The regulatory powers the UCSA delegates to the Board amount to just that, the power to regulate. They do not affirmatively authorize retailers to engage in the regulated activity over the objections of local authorities. The UCSA does not create an explicit "unabridged right" to buy or sell marijuana any more than the statute in *Weden* creates a right to operate personal watercraft. In both cases, licensing is a "precondition" to participation in the regulated activity. *Weden*, 135 Wn.2d at 695. Because the power the UCSA delegates to the Board neither include nor preclude local governments' zoning authority, the Ordinance does not conflict with state marijuana laws by exercising authority delegated to the Board.

D.     The UCSA Does Not Preempt the Ordinance

Emerald also argues that the Ordinance is expressly and impliedly preempted by state law. State law preempts a local ordinance if the "statute occupies the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance may not be harmonized." *Lawson*, 168 Wn.2d at 679.

Field preemption arises when a state regulatory system occupies the entire field on a given subject matter, leaving no room for local regulation. *Lawson*, 168 Wn.2d at 679. Field preemption may be express, in which case further analysis is unnecessary. *See Brown*, 116 Wn.2d at 560. Field preemption may also be implied "from the purpose of the statute and the facts and circumstances under which it was intended to operate." *Lawson*, 168 Wn.2d at 679.

Conflict preemption arises if the Ordinance directly and irreconcilably conflicts with a state statute such that the two cannot be harmonized. *Lawson* at 682; *Brown*, 116 Wn.2d at 561.

16

1.     The UCSA Does Not Expressly Preempt the Ordinance

Emerald, relying on RCW 69.50.608, argues that the UCSA expressly preempts the Ordinance. We disagree.

Express preemption requires a clear indication of legislative intent to occupy the entire field. *Lawson*, 168 Wn.2d at 679. Here, there is none.

RCW 69.50.608 states:

> The state of Washington fully occupies and preempts the entire field of setting penalties for violations of the controlled substances act. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to controlled substances that are consistent with this chapter. Such local ordinances shall have the same penalties as provided for by state law. Local laws and ordinances that are inconsistent with the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of the city, town, county, or municipality.

Although the Ordinance does not "set[] penalties for violations of the controlled substances act," RCW 69.50.608, Emerald nevertheless maintains that a total ban on marijuana sales is "inconsistent with the requirements of state law." Br. of Appellant at 31 (quoting RCW 69.50.608). Because the statute narrowly limits its preemption to criminal violations of the UCSA, we disagree.

The UCSA mandates that the Board regulate a specific list of relevant activities, including aspects of production, processing and sale. RCW 69.50.325-.369. Absent clear statutory language to the contrary, the County retains jurisdiction in all matters not explicitly delegated to the Board.[13] WASH. CONST. Art. XI, § 1; 2014 Op. Att'y Gen. No. 2. Furthermore, in this case the County's

---

[13] As discussed, Board regulations explicitly recognize local governments' retained zoning authority: "The issuance or approval of a [state] license shall not be construed as a license for, or an approval of, any violations of local rules or ordinances including, but not limited to . . . zoning ordinances." WAC 314-55-020(15).

exercise of that jurisdiction which resulted in a local ban on the sale of marijuana is not inconsistent with chapter 69.50 RCW. We are mindful that the UCSA does not *require* marijuana sales; it merely sets conditions for sales that do occur, and penalties if those conditions are violated. RCW 69.50.325-.369.

### 2. The UCSA Does Not Impliedly Preempt the Ordinance

Emerald next argues that field preemption can be implied from the statements of purpose in the UCSA as well as from "the facts and circumstances upon which the statute was intended to operate." Br. of Appellant at 30, 33, 34. Emerald asserts that successfully replacing the illegal marijuana market with a "tightly-regulated, state-licensed system" requires marijuana regulation to be uniform throughout the state. Br. of Appellant at 34. We disagree with Emerald that the UCSA impliedly preempts the ordinance.

Field preemption may be implied from the statutory purpose, as well as the facts and circumstances in which the statue was intended to operate. *Lawson*, 168 Wn.2d at 679. When a statute is enacted by initiative, a court's purpose inquiry includes consideration of "the intent of the voters who enacted the measure." *Roe*, 171 Wn.2d at 746. This analysis "focuses on the language of the statute 'as the average informed voter voting on the initiative would read it.'" *Roe*, 171 Wn.2d at 746 (quoting *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2001)). We normally only look to extrinsic evidence of voter intent, such as statements in the voters' pamphlet, if the statute is ambiguous. *Amalgamated Transit*, 142 Wn.2d at 205-06. However, because Emerald's argument is that Washington's statutory regulation of marijuana impliedly preempts the entire field of recreational marijuana regulation, we must

examine the underlying statutory purpose. Because the laws in question arise from I-502, we consider the initiative, including relevant statements in the voters' pamphlet.[14]

Emerald's implied preemption argument asserts that allowing piecemeal county-level bans[15] would render the UCSA's intent to establish a regulated marijuana market "meaningless." Br. of Appellant at 33-35. Emerald correctly points out that one of I-502's goals was to provide a safe, regulated alternative to illegal marijuana sales. Initiative 502, LAWS OF 2013, ch. 3, § 1. However, the accomplishment of this goal does not necessitate that every unincorporated area in Washington or even every municipality in Washington allow the sale of marijuana. In addition, Emerald bears the burden to demonstrate preemption. *Cannabis Action Coal.*, 183 Wn.2d at 226. Courts will not interpret a statute as stripping local governments of legislative authority absent clear statutory intent. *Southwick, Inc. v. City of Lacey*, 58 Wn. App. 886, 891-92, 795 P.2d 712 (1990). Emerald fails to show that the UCSA impliedly strips the County of its ability to exercise police power through zoning regulation. On the contrary, a closer reading of the UCSA indicates that the legislature intended to leave local governments' zoning authority undisturbed.

The UCSA empowers the Board to influence the location of marijuana retail outlets in two ways. First, the Board determines the maximum number of retail locations in a given jurisdiction. RCW 69.50.345(2), .354. Second, the Board has the final say in retail licensing decisions. RCW 69.50.331(7)(b)-(c); WAC 314-55-050.

---

[14] Because this argument is inextricably interwoven with Emerald's argument about statutory purpose, we discussed this topic in more detail in Part C.2, above.

[15] This hypothetical factual scenario is not before us. We are merely determining the lawfulness of the County's Ordinance.

These powers are distinct from the County's zoning authority. The Board's authority to determine the maximum number of retail locations allowed under state law does not give it the power to determine *where* a store is located within a given jurisdiction. Similarly, the fact that the Board can overrule a local government's objection to licensing means that the County does not have final authority to decide who gets a license. It does not mean that the UCSA strips the County of its power to determine whether retail marijuana businesses can operate within its jurisdiction.

This interpretation is consistent with the Board's own regulations, which explicitly recognize that local governments retain zoning authority. WAC 314-55-020(15) states: "The issuance or approval of a [state] license shall not be construed as a license for, or an approval of, any violation of local rules or ordinances including, but not limited to . . . zoning ordinances." Where "'an agency is charged with the administration and enforcement of a statute, the agency's interpretation of an ambiguous statue is accorded great weight in determining legislative intent.'" *Jametsky v. Olsen*, 179 Wn.2d 756, 764 n.2, 317 P. 3d 1003 (2014) (quoting *Waste Mgmt. of Seattle, Inc. v. Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994)).[16] The legislature has failed to amend the statute in response to this regulation, indicating apparent legislative acquiescence.[17] In fact, the legislature rejected a proposed I-502 amendment containing explicit zoning preemption language. H.B. 2322, 63rd Leg., Reg. Sess. (Wash. 2014).

---

[16] The AGO, conducting its own analysis, similarly concluded that regulations implementing I-502 did "not occupy the entire field of marijuana business regulation." CP at 298.

[17] "The Legislature is deemed to acquiesce in the interpretation of the court if no change is made for a substantial time after the decision." *State v. Coe*, 109 Wn.2d 832, 846, 750 P.2d 208 (1988); *see also Baker v. Leonard*, 120 Wn.2d 538, 545, 843 P.2d 1050 (1993) ("Legislative silence regarding the construed portion of the statute in a subsequent amendment creates a presumption of acquiescence in that construction.").

In sum, the UCSA does not occupy the entire field of marijuana regulation in Washington. Because state law has not explicitly or impliedly occupied the entire field, the County retains its zoning authority.

We affirm the trial court's order granting summary judgment.

Melnick, J.

We concur:

Johanson, J.

Maxa, A.C.J.