# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JEFFERSON COUNTY, a political subdivision of the State of Washington, | No.  51500-8-II |
| Respondent, | |
| v. | |
| MICHAEL ANDERSON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — This appeal arises from Michael Anderson's business of storing, selling, and disposing of vehicles and other items on his property in Jefferson County and the County's related enforcement actions.  Anderson appeals the superior court's 2018 order of contempt and order for warrant of abatement, the related fines, and the award of attorney fees and costs.  He argues that the state law definition of solid waste preempts the inclusion of junk vehicles within the definition of solid waste under the County's local ordinance and because the ordinance conflicts with state law, the conflicting portions of the ordinance are unconstitutional.  Anderson also argues that the court erred by concluding that he was in contempt for violating the 2012 amended order granting permanent injunction and issuing the order for the warrant of abatement.[1]  We hold that Anderson's preemption claims fail and that portions of the County's ordinance are not unconstitutional.  We

---

[1] He also argues that the court erred by entering an order for an amended permanent injunction in 2012 and denying his motion to declare the property as non-conforming.  Because he failed to appeal those orders, we decline to consider them.

affirm the order of contempt, the order for the warrant of abatement, the award of fines, and the award of attorney fees and costs. We award the County reasonable appellate attorney fees and costs, and deny Anderson's request for reimbursement and appellate fees and costs.

FACTS

Anderson owns five acres in Jefferson County located at 890 Old Hadlock Road on which he operates a business, Michael's Custom Rebuild and Towing.

A. COMPLAINT AND DECLARATION OF PUBLIC NUISANCE

In November 2006, the County filed a complaint against him and sought to have his property declared a public nuisance under RCW 7.48.010, RCW 7.48.120, and RCW 9.66.010 based on his violations of Jefferson County Code (JCC) since 1997. Since then, Anderson and the County have been in protracted litigation over what vehicles and other personal property were required to be removed.

In 2008, the County filed a motion for partial summary judgment to declare the property a public nuisance. The superior court granted the motion. Anderson did not appeal this order.

B. ORDERS OF ABATEMENT AND ORDER GRANTING PERMANENT INJUNCTION RELATED TO THE JUNK VEHICLES AND OTHER SOLID WASTE

In 2011, the County filed a motion for an order for a warrant of abatement and for a permanent injunction which the court granted. The permanent injunction specifically enjoined Anderson from crushing or parting (disassembling or cannibalizing) motor vehicles, processing scrap metal, depositing or leaving at or bringing or hauling to the property "any motor vehicle, vehicle hulk, trailer, fifth wheel, boat or other personal property that did not and/or could not arrive at [the property] under its own power." Clerk's Papers (CP) at 15.

The County then supervised a massive clean-up of the property to remove 77 tons of solid waste from the property included numerous "junk vehicles" as defined in RCW 46.55.010(5).[2] CP at 78. Approximately 221 vehicles or vehicle hulks were removed along with an additional 175 tons of solid waste.[3]

C. 2012 AMENDED PERMANENT INJUNCTION

In April 2012, the County received a complaint that Anderson had been towing junk vehicles back onto the property in violation of the March 2011 permanent injunction. The County filed a motion for contempt. The court found Anderson in contempt, ordered him to pay the County $1,959 by mid-July of 2012, and found that "[t]he County holds a reasonable belief that based on [Anderson's] behavior throughout this litigation that he will continue to defy and violate the permanent injunctive relief the County obtained in March 2011." CP at 80.

The court concluded that Anderson's property was a public nuisance; the harm was immediate and irreparable because there was a nearby salmon-bearing stream; the County had a clear legal and equitable right to protect the health, welfare, and general safety of its citizens by

---

[2] Under RCW 46.55.010(5) a "junk vehicle" is "a vehicle certified under RCW 46.55.230 as meeting at least three of the following requirements: (a) Is three years old or older; (b) Is extensively damaged, such damage including but not limited to any of the following: A broken window or windshield, or missing wheels, tires, motor, or transmission; (c) Is apparently inoperable; (d) Has an approximate fair market value equal only to the approximate value of the scrap in it."

[3] The "solid waste" removed from the property included the additional items Anderson was enjoined from bringing to the property.

obtaining a warrant of abatement; and the soil was contaminated. The court also concluded that Anderson had a full opportunity to be heard and upon subsequent inspection after the 2011 permanent injunction was issued, he engaged in additional violations, thereby necessitating additional warrants of abatement in September 2012 which were lawfully executed. CP at 81-82. The court concluded that "[c]urrently located upon and at the [property] is solid waste in a quantity that would, if brought to the attention of this court through admissible evidence, violate[] the Jefferson County Solid Waste Code now codified as [c]hapter 8.10 of the Jefferson County Code." CP at 82.

On November 2, 2012, the court granted the County's motion for an amended permanent injunction and entered an order allowing for continuing jurisdiction. The court concluded that Anderson's property continued to be a public nuisance. The court enjoined him from crushing or parting motor vehicles, processing scrap metal, and bringing any additional junk vehicles to the property. Anderson did not appeal the 2012 amended order granting permanent injunction.

D. NEW COMPLAINTS AND AGREEMENT TO THE "RUN AND DRIVE" TEST FOR JUNK VEHICLES

In 2014 and 2015, the County received new complaints that Anderson had brought more solid waste onto the property. The County inspected the property twice in May 2017, and resumed enforcement proceedings against Anderson to address these complaints. They tested 56 vehicles

4

to determine whether they qualified as junk vehicles under RCW 46.55.010(5) and JCC 8.10.100,[4] the County's ordinance governing solid waste.[5]

The parties then entered into a stipulated agreement, adopted by the court, to use a "run and drive" test to determine which of the previously untested vehicles qualified as junk vehicles. The parties agreed to the following: 56 vehicles were tested in May 2017 by the County; some vehicles were not operable on May 23, 2017, some vehicles qualified as junk vehicles under the JCC and state law, and many other vehicles and items may also qualify as solid waste, such as inoperable boats, vehicle parts, and vehicle hulks; in September 2017, the County would video any

---

[4] Located at https://www.codepublishing.com/WA/JeffersonCounty/html/JeffersonCounty08/JeffersonCounty0810.html#8.10.100

[5] Under JCC 8.10.100, "A junk vehicle includes campers, boats, boat trailers or any other type of vehicle used for human transportation which may exhibit any of the following:
- Build-up of debris, moss or weeds on, in, under, or around the vehicle that obstructs use;
- Damage to the frame;
- More than one missing or shattered window or windshield;
- More than one inoperable or missing headlight or taillight;
- More than one flat tire;
- A missing or inoperable engine or transmission;
- A missing wheel, license plate, driver-side mirror, tire, body panel, door, hood or other obvious body part, not including a bumper.
- A license plate that has been invalid for more than 60 days.
- Evidence that the vehicle has not been moved in at least 60 days.

A vehicle certified under RCW 46.55.230 as meeting at least three of the following requirements shall be considered a junk vehicle:

1. Three (3) years old or older;
2. Extensively damaged, such damage including but not limited to the following: a broken window or windshield, or missing wheels, tires, motor, or transmission;
3. Apparently inoperable; and/or
4. Has approximate fair market value equal only to the approximate value of the scrap in it.

For enforcement purposes, possessing three (3) or more junk vehicles on a single property of any size is not allowed under this regulation."

attempts to determine if other items were operable; if the items were shown to be operable, they would not be considered junk vehicles, but if any items were not operable within 5 minutes or less from the first attempt, they would be considered junk vehicles. The court set a review hearing for September 22, 2017.

On September 13, 2017, the County again inspected the property and the County and Anderson performed the "run and drive" test on the vehicles on the property. The County took video of the testing and determined that many of the vehicles would not run. Roger Parker, a County health employee with expertise in junk vehicles, prepared a list of the junk vehicles, later filed with the superior court as exhibit 11. In his declaration, Parker opined that Anderson brought over 90 junk vehicles onto the property after entry of the 2012 amended permanent injunction.

E. ORDER FOR WARRANT OF ABATEMENT

In November 2017, the County filed a motion for an order for a warrant of abatement requesting the removal of solid waste, including junk vehicles, from the property. The County argued that a warrant was appropriate because the property had already been declared a public nuisance and Anderson had (1) brought more solid waste which included junk vehicles onto the property, and (2) failed to remove the offending junk vehicles from the property in violation of the 2012 amended permanent injunction.

F. MOTION AND ORDER TO SHOW CAUSE RE CONTEMPT AND COURT'S ORDER ON CONTEMPT, AWARD OF FINES AND ATTORNEY FEES AND COSTS

On December 1, 2017, the County filed a motion for an order to show cause why Anderson should not be held in contempt of the 2012 amended permanent injunction. After a hearing, the court granted the County's motion and ordered that Anderson appear for a show cause hearing on

January 26, 2018.  At that hearing, the court addressed the County's motion to find Anderson in contempt and the County's motion requesting the court to issue an order for warrant of abatement.

The court made the following relevant findings of fact.  The County conducted additional inspections of the property in May and September 2017 and tested 56 vehicles, subject to the parties' agreement that any vehicle not operable within 5 minutes of testing qualified as a junk vehicle subject to abatement and removal.  The court further found that the County had provided evidence that Anderson was in contempt because (1) he had brought personal property and solid waste onto the property, including but not limited to junk vehicles, vehicle hulks, vehicle parts, and tires; (2) he had intentionally violated the amended permanent injunction; and (3) it was within his power to comply with the order.  The County incurred $9,425 in attorney fees and costs to research and prosecute this case.

Based on its findings, the court entered the following relevant conclusions of law.  Anderson disobeyed a mandate of the court that was within his power to comply with under RCW 7.21.010(1)(b) and RCW 7.21.030.  The County established that Anderson was in contempt and that civil contempt sanctions were necessary to coerce his compliance with the 2012 amended permanent injunction.  Anderson's prior fine for contempt was $1,539 for three days of violations, his current violations were more extensive, and thus, the court ordered him to pay $9,425 in legal fees to the County and one associated cost, and ordered him to pay an additional $6,000 fine.  The court then entered an order of contempt and an order directing issuance of the warrant of abatement for the property requiring that Anderson remove the offending junk vehicles on the property and setting a review hearing.  Anderson appeals.

ANALYSIS

I. LEGAL PRINCIPLES

"Unchallenged findings [of fact] are verities on appeal." *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 105, 267 P.3d 435 (2011). We review a superior court's conclusions of law de novo to determine whether they are supported by the findings of fact. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

We review the interpretation of a statute de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. In determining the legislature's intent, we must first examine the statute's plain language and ordinary meaning. *Jametsky*, 179 Wn.2d at 762. Legislative definitions included in the statute are controlling, but in the absence of a statutory definition, we give the term its plain and ordinary meaning as defined in the dictionary. *American Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). In addition, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole when analyzing a statute's plain language. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012).

If there is more than one reasonable interpretation of the plain language, the statute is ambiguous. *Jametsky*, 179 Wn.2d at 762. When a statute is ambiguous, we resolve ambiguity by engaging in statutory construction and considering other indications of legislative intent. *Jametsky*, 179 Wn.2d at 762. However, if the statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources. *Jametsky*, 179 Wn.2d at 762.

II. ORDER FOR WARRANT TO ABATE A NUISANCE

A. COURT'S STATUTORY AUTHORITY

Anderson argues that the superior court erred by entering the order for a warrant requiring abatement of a nuisance because it did not have the statutory authority to order him to remove the junk vehicles.[6] Anderson argues that the County should have pursued a public nuisance route, "with more stringent safeguards for the property owner." Appellant's Opening Br. at 31. The County argues that the superior court had authority to issue the order under RCW 7.21.030(2)(c). We hold that the superior court, after finding Anderson was in contempt, had the statutory authority to enter the abatement order, and thus, Anderson's claim fails.

RCW 7.21.030(2)[7] states, in relevant part, that

> [i]f the court finds that [a] person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions:
>
> . . . .
>
> (c) An order designed to ensure compliance with a prior order of the court.

Anderson does not assign error to any of the findings of fact in either order he appeals, and thus, the findings of fact are verities.[8] The superior court found that Anderson had "created, condoned, and worsened the nuisance by violating the terms of the 2012 [a]mended [p]ermanent

---

[6] Preliminarily, the County argues that Anderson's appeal of the order for warrant of abatement is moot because after Anderson filed his appeal, he removed the junk vehicles as required in the order of abatement. There is nothing in the record to substantiate this assertion. *See* RAP 9.6(a). Thus, we address the merits of this issue.

[7] The legislature amended RCW 7.21.030 in 2019. Laws of 2019, ch. 312 § 3. Because these amendments are not relevant here, we cite to the current version of this statute.

[8] *Jensen*, 165 Wn. App. at 105.

[i]njunction." CP at 678. In that order, the court instructed Anderson to abate the conditions on that property "that make it a public nuisance." CP at 680. In the 2018 contempt order, the superior court found that Anderson had violated the 2012 amended permanent injunction order and further found that it was within his power to comply. Under RCW 7.21.030(2), a court, after finding that an individual is in contempt and that it is within that person's power to comply, "may find the person in contempt of court and impose one or more of the following remedial sanctions . . . ." The language of the statute is unambiguous as to the court's authority. Thus, the court had the statutory authority to enter the abatement order that required the abatement of junk vehicles for Anderson's violation of the 2012 amended permanent injunction order. Anderson's claim that the court lacked statutory authority to have him remove the junk vehicles, fails.[9]

B. STATUTORY PREEMPTION

Anderson argues that (1) the County's ordinance, JCC 8.10.100, broadly defines "solid waste" to include abandoned vehicles as well as junk vehicles, (2) this portion of the ordinance conflicts with the more narrow definition of solid waste under RCW 70.95.030(22), and (3) state law preempts this portion of the ordinance, rendering the conflicting portions of the ordinance unconstitutional.

We review constitutional preemption challenges de novo. *Emerald Enterprises, LLC v. Clark County*, 2 Wn. App. 2d 794, 803, 413 P.3d 92 (citing *Watson v. City of Seattle*, 189 Wn.2d 149, 158, 401 P.3d 1 (2017)), *review denied*, 190 Wn.2d 1030 (2018). Under article XI, section 11 of the state constitution, counties may make and enforce "all such local police, sanitary and

_____

[9] Because we hold that the superior court acted with statutory authority, we do not consider Anderson's additional argument that the court did not have the inherent authority to act.

other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11. "[A]n ordinance is valid under this provision 'unless: (1) the Ordinance conflicts with some general law; (2) the Ordinance is not a reasonable exercise of the [County's] police power; or (3) the subject matter of the Ordinance is not local.'" *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 225-26, 351 P.3d 151 (2015) (quoting *Weden v. San Juan County*, 135 Wn.2d 678, 692-93, 958 P.2d 273 (1998)). Because we presume the ordinance is constitutional, the party challenging an ordinance, here Anderson, has the heavy burden of establishing the constitutional invalidity of the ordinance. *HJS Dev.*, *Inc. v. Pierce County*, 148 Wn.2d 451, 477, 61 P.3d 1141 (2003). "'Every presumption will be in favor of constitutionality.'" *HJS Dev.*, *Inc.*, 148 Wn.2d at 477 (quoting *Lenci v. City of Seattle*, 63 Wn.2d 664, 667-68, 388 P.2d 926 (1964)).

Washington law recognizes two categories of preemption: field preemption and conflict preemption. *Cannabis Action Coal.*, 183 Wn.2d at 226. Field preemption may be either express or implied. *Cannabis Action Coal.*, 183 Wn.2d at 226. It is express if "there is express legislative intent to preempt the field," and it is implied if the intent to preempt is "necessarily implied . . . from the purpose of the statute and the facts and circumstances under which it was intended to operate." *Lawson City v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010) (citation omitted). Courts have recognized that when a state statute expressly provides for local jurisdiction over a subject, state law does not impliedly preempt the field of that subject. *Cannabis Action Coal*, 183 Wn.2d at 226-27. Conflict preemption may occur in one of three ways. *See Emerald Enterprises*, 2 Wn. App. 2d at 804. Conflict preemption may arise when an ordinance permits what state law forbids or forbids what state law permits, it may occur when an ordinance thwarts the legislative purposes or statutory scheme, and it may exist when the local ordinance exercises

power that the statutory scheme did not confer on local governments. *Emerald Enterprises*, 2 Wn. App. 2d at 804.

If a state statute does not have an express preemption clause, we next consider whether field preemption is implied. *Cannabis Action Coal*, 183 Wn.2d at 226-27. When, "the legislature is silent on its intent to occupy a given field, we may refer to the purposes of the particular legislative enactment and to facts and circumstances upon which the statute was intended to operate," to determine whether there is implied preemption. *HJS Dev.*, *Inc.*, 148 Wn.2d at 477.

## 1. No Field Preemption

### a. Express Preemption

Anderson argues that the more narrow definition of "solid waste" under RCW 70.95.030(22) expressly preempts the broader definition of "solid waste" under JCC 8.10.100. Anderson argues that RCW 70.95.030(22) defines "solid waste" to include "abandoned vehicles," but not "junk vehicles," which he claims are separately regulated under RCW 46.55.230. He argues that the state law definition preempts the inclusion of junk vehicles within the definition of solid waste under JCC 8.10.100. Thus, he argues that the junk vehicles on his property were not "abandoned vehicles" and the court should not have concluded that the junk vehicles on his property were "solid waste" subject to abatement, or that he was in contempt. We disagree.

The legislature has placed "the responsibility of county and city governments to assume primary responsibility for solid waste management and to develop and implement aggressive and effective waste reduction and source separation strategies." RCW 70.95.010(6)(c).

RCW 70.95.030(22) defines "solid waste" as "all putrescible and non-putrescible solid and semisolid wastes including, but not limited to, garbage, rubbish, ashes, industrial wastes, swill,

sewage sludge, demolition and construction wastes, *abandoned vehicles or parts thereof*, and recyclable materials." (Emphasis added).

> The County's ordinance, JCC 8.10.100, defines "solid waste" as follows:
>
> All putrescible and non-putrescible solid and semi-solid wastes, including, but not limited to, garbage, rubbish, ashes, industrial wastes, swill, animal wastes, construction and demolition wastes, land clearing wastes, contaminated soils, contaminated dredged spoils, *junk vehicles or parts thereof* (including waste tires), and discarded commodities. This includes all liquid, solid and semi-solid, materials that are not the primary products of public, private, industrial, commercial, mining and agricultural operations. Solid waste also includes, but is not limited to, woodwaste, dangerous waste, yard waste, bulky waste biomedical waste, animal waste, waste tires, recyclable materials, and problem wastes. . . .

(Emphasis added). The definition of "solid waste" under JCC 8.10.100 is more specific and includes junk vehicles, unlike the state law definition of "solid waste."

RCW 70.95.160 specifically authorizes counties to adopt solid waste regulations that are "more stringent than the minimum functional standards" adopted by the Department of Ecology in WAC 173-304. Thus, the state law regulating solid waste and the definition of solid waste under RCW 70.95.030(22) do not preempt the field of solid waste as there is no express legislative intent to do so in the statute. Further, the legislature separately and expressly authorizes counties under RCW 70.95.160 to adopt more stringent solid waste regulations, as the County did here by enacting JCC 8.10.100. Thus, Anderson's claim of express preemption fails. We next consider whether field preemption is implied.

b. No Implied Preemption

If a state statute does not have an express preemption clause, we next consider whether implied field preemption applies. *Cannabis Action Coal*, 183 Wn.2d at 226. When "the legislature is silent on its intent to occupy a given field, we may refer to the purposes of the particular legislative enactment and to facts and circumstances upon which the statute was intended to operate," to determine whether there is implied preemption. *HJS Dev., Inc.*, 148 Wn.2d at 477.

As discussed above, the legislature expressly authorized counties to enact more stringent solid waste regulations under RCW 70.95.160. Thus, the legislature did not impliedly preempt the field of solid waste. We hold that Anderson's claim of implied preemption fails. We next consider whether conflict preemption applies.

2. No Conflict Preemption

Anderson argues that (1) "[u]nder state law[,] junk vehicles on private property with permission of the property owner do not fit with in the statutory definition of solid waste" under RCW 70.95.030(22), (2) there is a conflict with the county ordinance defining solid waste, and (3) conflict preemption applies. Appellant's Opening Br. at 28 (boldface omitted). We hold that because there is no conflict, conflict preemption does not apply.

Under conflict preemption precedent, a state law preempts a local ordinance "when an ordinance permits what state law forbids or forbids what state law permits." *Lawson*, 168 Wn.2d at 682. We will find state law to preempt an ordinance only if the ordinance "'directly and irreconcilably conflicts with the statute.'" *Lawson*, 168 Wn.2d at 682 (internal quotation marks omitted) (quoting *HJS Dev.*, *Inc.*, 148 Wn.2d at 482). However, if "the ordinance and the statute can be harmonized, no conflict will be found." *HJS Dev.*, *Inc.*, 148 Wn.2d at 482.

Chapter 46.55 RCW applies to towing and impoundment. RCW 46.55.230(1)(a) states, "Notwithstanding any other provision of law, any law enforcement officer having jurisdiction, or any employee or officer of a jurisdictional health department acting pursuant to RCW 70.95.240, or any person authorized by the director shall inspect and may authorize the disposal of an abandoned junk vehicle." This statute permits law enforcement and county health departments to authorize the disposal of an abandoned junk vehicle by a registered tow truck operator. The statute does not preempt a county from adopting more stringent solid waste regulations as authorized by RCW 70.95.160. Rather, RCW 70.95.160 specifically authorizes counties to adopt solid waste regulations that are "more stringent than the minimum functional standards" adopted by the Department of Ecology in WAC 173-304.

Anderson argues that the difference in the definitions of solid waste creates an irreconcilable conflict. Despite the difference in the statutory and ordinance definitions of solid waste, the legislature also contemplated that counties, through their health departments and law enforcement, could dispose of abandoned junk vehicles. RCW 46.55.230. Thus, JCC 8.10.100 does not conflict with state law because it does not allow an enforcement mechanism that state law prohibits when it permits regulation of junk cars as solid waste because that authority exists under RCW 46.55.230 and RCW 70.95.160. Anderson does not show that the ordinance prohibits something (possession of junk vehicles on one's own property) that state law permits.

Nor does the ordinance trigger conflict preemption by thwarting the purpose of the legislative scheme or exercising power that the statutory scheme did not confer on Jefferson County. *See Emerald Enterprises*, 2 Wn. App. 2d at 804. RCW 70.95.160 explicitly authorizes local governments to adopt more stringent stands for solid waste management. In this way, JCC

15

8.10.100 furthers, rather than thwarts the state statutory scheme. Moreover, RCW 70.95.160 expressly confers upon local governments the power to adopt more stringent regulations for solid waste management, so Jefferson County was exercising power created by the statutory scheme of RCW 70.95.160 when it enacted JCC 8.10.100.

Here, the court properly relied on the statutory definition of junk vehicle under RCW 46.55.010(5), the broader definition of junk vehicle under JCC 8.10.100, and the agreed "run and drive" test to conclude that over 90 junk vehicles were brought onto Anderson's property in violation of the 2012 amended order granting permanent injunction. For the order for warrant of abatement, the court found that Anderson "has created, condoned and worsened the nuisance by violating the terms of the 2012 [a]mended [p]ermanent [i]njunction." CP at 678. Thus, we hold that Anderson's claim that the county ordinance conflicts with state law and conflict preemption applies, fails.[10]

### III. CONTEMPT

Anderson argues that the superior court erred by finding him in contempt of court. We disagree.

We review a contempt order for an abuse of discretion. *Weiss v. Lonnquist*, 173 Wn. App. 344, 363, 293 P.3d 1264 (2013). A superior court abuses its discretion when its decision rests on unreasonable or untenable grounds. *Weiss*, 173 Wn. App. at 363.

---

[10] Because his claim fails, we do not separately address his additional claim that the court failed to interpret the contempt order consistent with state law.

We review whether the findings support the conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013). We review a superior court's conclusions of law de novo. *Sunnyside Valley Irr. Dist.*, 149 Wn.2d at 880.

Here, the superior court permanently enjoined Anderson from "[d]epositing or leaving at or bringing or hauling to the [property] any solid waste, including but not limited to junk vehicles, vehicles hulks, vehicle parts, tires and/or any other personal property which fits within the statutory definition of solid waste." CP at 668 (internal quotation marks omitted). The court found that "[i]t was within Mr. Anderson's power to comply with every requirement of the 2012 [a]mended [p]ermanent [i]njunction." CP at 668.

The superior court concluded that Anderson had failed to comply with the 2012 amended permanent injunction, the County had met its burden of proving the elements of contempt of court under RCW 7.21.010(1)(b) and RCW 7.21.030 by a preponderance of the evidence, and Anderson was in contempt of the 2012 amended permanent injunction based on the court's findings of fact. These conclusions support the superior court's order that as of January 26, 2018, Anderson was in contempt for violating the amended permanent injunction order. Thus, Anderson's argument that the court abused its discretion, fails.

IV. REIMBURSEMENT, SUPERIOR COURT FEES, AND APPELLATE FEES AND COSTS

Anderson argues that (1) the superior court erred by awarding the County attorney fees and costs below, (2) we should award him reimbursement, attorney fees and costs, and compensation for expenses related to the actions he took to comply with the warrant of abatement, and (3) we should award him appellate attorney fees and costs. The County argues that the superior court did not abuse its discretion by awarding it reasonable attorney fees and costs below and requests an

award of reasonable appellate attorney fees and costs for defending the contempt order on appeal. We hold that the superior court did not err by awarding the County reasonable attorney fees and costs below. Because Anderson does not prevail on appeal, we deny his request. We also hold that the County is entitled to an award of reasonable appellate attorney fees and costs, and thus, we grant that request.

A. SUPERIOR COURT, ATTORNEY FEES AND COSTS, AND AWARD OF FINES.

We review a superior court's award of attorney fees and costs for an abuse of discretion. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). As discussed above, a court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Chuong Van Pham*, 159 Wn.2d at 538. A court necessarily abuses its discretion when basing its decision on an erroneous view of the law or when applying an incorrect legal standard. *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011).

RCW 7.21.030(2) states, in relevant part, that

[i]f the court finds that [a] person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions:

. . . .

(c) An order designed to ensure compliance with a prior order of the court.

RCW 7.21.030(3) states that

[t]he court may, in addition to the remedial sanctions set forth in subsection (2) of this section, order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney[] fees.

In the order of contempt against Anderson, the superior court awarded the County attorney fees and costs in the amount of $9,425. Anderson was ordered to pay the County an additional fine of $6,000.00 "as a consequence of his contemptuous acts."

Because RCW 7.21.030(3) authorizes an award of fees and costs below and the superior court based its award on Anderson's failure to comply with the 2012 amended permanent injunction order, we hold that the court did not abuse its discretion and we affirm the award of fines and attorney fees and costs to the County below.

B. APPELLATE ATTORNEY FEES AND COSTS

RAP 14.2 provides that we may award costs to the party who substantially prevails on review. RAP 18.1(b) provides that a party requesting attorney fees and costs "must devote a section of its opening brief to the request for the fees or expenses." "RCW 7.21.030(3) permits an award of attorney fees incurred by a party in defending the appeal of a contempt order," related to a remedial sanction. *In re Rapid Settlements, Ltd.*, 189 Wn. App. 584, 617, 359 P.3d 823 (2015). We hold that the County is entitled to an award of reasonable appellate fees and costs because it substantially prevailed on appeal.

CONCLUSION

We hold that Anderson's preemption claims fail and that portions of the County's ordinance are not unconstitutional. We affirm the order of contempt, the order for the warrant of abatement, the award of fines, and the award of attorney fees and costs. We award the County

No. 51500-8-II

reasonable appellate attorney fees and costs, and deny Anderson's request for reimbursement and appellate fees and costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

GLASGOW, J.